# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| XAVIER LAURENS, individually and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) | Case No. \_\_\_\_\_ |
| v. ) ) | |
| VOLVO CARS OF NORTH AMERICA, LLC, a Delaware limited liability corporation, and VOLVO CAR USA, LLC, a Delaware limited liability corporation, ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. ) | |

## CLASS ACTION COMPLAINT

Joseph J. Siprut
*jsiprut@siprut.com*
Todd L. McLawhorn
*tmclawhorn@siprut.com*
John S. Marrese
*jmarrese@siprut.com*
SIPRUT PC
17 North State Street
Suite 1600
Chicago, Illinois 60602
Phone: 312.236.0000
Fax: 312.754.9616
**www.siprut.com**

*Attorneys For Plaintiff
And The Proposed Putative Class*

Plaintiff Xavier Laurens ("Plaintiff") brings this Class Action Complaint against Defendants Volvo Cars of North America, LLC, and Volvo Car USA, LLC (collectively, "Volvo" or "Defendants"), individually and on behalf of all others similarly situated, and complains and alleges upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## I.   NATURE OF THE ACTION

1. Volvo manufacturers and sells premium automobiles, including sports utility vehicles. Volvo markets its environmental and safety features to differentiate Volvo cars from those of other car manufacturers, and offers those features as reasons for consumers to purchase Volvo cars.

2. Among its product offerings, Volvo sells the XC90 T8 ("T8"), which is a seven-passenger sport utility vehicle that contains a twin engine combining a gasoline engine with an electric motor, and has the ability to operate solely on the electric motor. In various press releases, brochures and product placements with trade publications, as set forth in more detail below, Volvo repeatedly represented in 2014 and 2015 that the T8 would have the capability to be driven solely on a battery charge for approximately 25 miles, which Volvo claimed would cover the average commute and daily errands for most people.

3. Based on Volvo's representations, Plaintiff ordered a T8 from his local Chicago Volvo dealer and waited nearly eight months before taking delivery in January 2016. Plaintiff paid over $83,000 for the T8. Unfortunately, the T8 does not come close to achieving 25 miles on a full electric charge. Rather, the T8 provides approximately 8 to 10 miles on a full electric charge—a far cry from the 25 miles promised by Volvo. And while Volvo now apparently claims that the range on the T8 is 17 miles, the only apparent method to even come *close* to the 17-mile range is

to drive the T8 at 40 miles an hour on the highway—with all the safety features disabled.

4. As a result of this reduced electric battery capacity, Plaintiff is unable to complete his daily commute or everyday tasks without using the gasoline engine, which prevents Plaintiff from obtaining the cost saving effects of foregoing gasoline for local trips and the environmental benefits of operating solely on electricity.

5. Plaintiff paid a hefty premium for the T8's electric motor. The seven-passenger Volvo XC90 T6, which does not contain the electric motor, starts at $49,800. By contrast, the seven-passenger T8, with the electric motor, starts at $68,100. All the other base features on the T6 and T8 are identical. Thus, Volvo is receiving, and Plaintiff paid, an $18,300 price premium for the electric motor—an electric motor that does not perform as promised.

6. Plaintiff brings this case on behalf of the following class: All individuals who purchased or leased a Volvo XC90 T8. Plaintiff asserts claims for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act and similar consumer fraud statutes of other states, fraud, breach of express warranty, and unjust enrichment. Plaintiff seeks to recover the damages he has suffered as the result of Volvo's conduct.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interests and costs, and there are numerous class members who are citizens of states other than Defendants' states of citizenship. In addition, this Court has specific jurisdiction over Defendants because Defendants conduct substantial business in the State of Illinois.

8. Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(1), (2), and

1391(c). By carrying out substantial business in this District, Defendants are deemed to reside here and are subject to this District's personal jurisdiction. Furthermore, a substantial part of the events giving rise to the claims emanated from activities within this District.

### III.    PARTIES

*Plaintiff*

9.      Plaintiff is a natural person currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the State of Illinois. Plaintiff owns a 2016 Volvo XC90 T8.

*Defendants*

10.     Defendant Volvo Cars of North America, LLC ("VCNA") is a Delaware limited liability company with its principal place of business in the State of New Jersey. VCNA is a wholly-owned subsidiary of Volvo Car Corporation, which is a Swedish corporation with its principal place of business in Gothenburg, Sweden, and which manufactures Volvo-branded cars. VCNA provides marketing, sales, distribution, parts service and training support for Volvo brand passenger cars in the United States. VCNA is an authorized importer and distributor of Volvo motor vehicles in the United States. For purposes of 28 U.S.C. § 1332, VCNA is a citizen of Sweden.

11.     Defendant Volvo Car USA, LLC ("VCUSA") is a Delaware limited liability company with its principal place of business in New Jersey. VCUSA is an authorized importer and distributor of Volvo motor vehicles in the United States. All of VCUSA's members are citizens of New Jersey or Sweden. Thus, for purposes of 28 U.S.C. § 1332, VCUSA is a citizen of New Jersey and Sweden.

## IV.   FACTUAL BACKGROUND

*Volvo's Business*

12.   Volvo Car Corporation first started manufacturing cars in 1927. Volvo Car Corporation has manufacturing facilities in Sweden, Belgium, and China and produces a premium range of cars that includes sedans, wagons, sportswagons, cross country cars and sports utility vehicles aka SUVs. Volvo Car Corporation is now owned by Zhejang Geely Holding of China.

*Volvo's Representations About the 2016 XC90 T8*

13.   In 2014, Volvo announced that Volvo Car Corporation was redesigning its popular selling XC90, which is a five to seven person sports utility vehicle. Included in the redesign was an XC90 model with a twin engine plug-in hybrid that was capable of running solely on electricity. This model was the XC90 T8, and it was first revealed at the Paris Motor Show in October 2014.

14.   Beginning in late 2014, Volvo began to tout the redesigned T8.

15.   On October 21, 2014, VCUSA issued a press statement about the "all-new Volvo XC90."[1] In that press release, VCUSA touted "[t]he top of the range XC90 Twin Engine, which combines a supercharged and turbocharged petrol engine with an electric motor, offers an unrivalled combination of power and clean operation . . . ."[2] VCUSA stated that the range for driving on pure electric power "will be around 40 kilometres."[3] A range of 40 kilometres translates to a range of 24.85 miles.

16.   On December 8, 2014, VCUSA issued a press release stating that "[t]he XC90 T8 has a range of more than 40km using just electricity, which covers the total distance most people drive in one day."[4]

---

[1] Ex. 1, Volvo Press Release, Oct. 21, 2014.
[2] Ex. 1, p. 3.
[3] Ex. 1, p. 3.
[4] Ex. 2, Volvo Press Release, Dec. 8, 2014.

17. On April 16, 2015, VCUSA issued another press release about the T8.[5] This time VCUSA stated "[p]reliminary testing based on EPA criteria produced an estimated range of 17 miles using just electricity, which represents a high percentage of drivers' typical daily usage."[6]

18. Similarly, Volvo produced a marketing brochure that stated: "Fully charged, the T8 Twin Engine provides 17 miles (estimated) of pure electric driving – sufficient to cover most commutes and everyday scenarios."[7] In that same brochure, Volvo praised the XC90 as "the safest, most advanced production care we have ever made; the most powerful and the most efficient."[8]

19. Two weeks later, on April 30, 2015, VCUSA went back to its original claims concerning the T8's electric range from its April 16 press release and surpassed them, stating that the T8 delivers "43km pure electric range."[9] A range of 43km translates to a range of 26.72 miles. VCUSA explained: "The improvement over the earlier announced figures were achieved thanks to the continuous innovation cycle at the Swedish company. . . . This makes the XC90 T8 Twin Engine the clear leader in its segment, with an exceptional combination of low fuel consumption, emissions and pure power."[10] VCUSA went on to note: "No other SUV in this class can deliver 43km of pure electric range . . . ."[11]

20. On January 21, 2016, VCUSA issued a press release stating "[t]he XC90 T8 has a range of more than 40 km using just electricity, which covers the total distance many people drive in one day."[12]

21. To this day, Volvo continues to represent, on its web page, that the T8 has an

---

[5] Ex. 3, Volvo Press Release, Apr. 16, 2015.
[6] Ex. 3, p. 1.
[7] Ex. 4, Volvo Brochure ("The All New Volvo XC90"), p. 26.
[8] Ex. 4, p. 5.
[9] Ex. 5, Volvo Press Release, Apr. 30, 2015, p. 1.
[10] Ex. 5, p. 1.
[11] Ex. 5, p. 1.
[12] Ex. 6, Volvo Press Release, Jan. 21, 2016, p. 1.

-5-

"Electric Range of approximately 25 miles."[13]

22. The XC90 starts with an MSRP of $43,950. The XC90 T6, which seats seven passengers, as does the T8, starts at an MSRP of $49,800. The XC90 T8 plug-in hybrid starts at an MSRP of $68,100.

23. Volvo's claims about the electricity range are important and material to a purchase decision. Indeed, Volvo also claims that it "is the only manufacturer that offers a hybrid SUV with seven seats."[14] Similarly, Volvo claims that it is the leader in its segment due to the electric battery range.

*Trade Publications*

24. In addition to the representations Volvo made in press releases and on its website, Volvo also provided information to auto trade publications and car magazines, which Volvo knew would be relied upon by the publications and potential Volvo purchasers, concerning the electric battery range.

25. For example, on February 19, 2015, Green Car Reports noted that Volvo quoted an electric battery range of 25 miles, but that Green Car Reports estimated the real range would ultimately be 18-21 miles.[15] Similarly, on May 21, 2015, Green Car Reports noted that the electric range was 25 miles, but that the EPA range may be lower.[16]

26. On May 3, 2015 Car Magazine UK stated that the T8 electric battery range was 26

---

[13] http://www.volvocars.com/us/cars/new-models/all-new-xc90/specifications (last visited Mar. 31, 2016).
[14] Ex. 4, p. 26.
[15] J. Voelcker, "2016 Volvo XC90 Plug-In Hybrid 'Twin Engine': First Drive," Feb. 19, 2015, available at http://www.greencarreports.com/news/1096866_2016-volvo-xc90-t8-plug-in-hybrid-twin-engine-first-drive (last visited Mar. 31, 2016).
[16] S. Edelstein, "2016 Volvo XC90 T8: First Plug-In Hybrid With 240-Volt Charging Cord, May 21, 2015, available at http://www.greencarreports.com/news/1098399_2016-volvo-t8-first-plug-in-hybrid-with-built-in-240-volt-charging (last visited Mar. 31, 2016).

miles.[17]

27. In April 2015, Inside EVs printed Volvo's representation that "[t]he Volvo XC90 T8 has a range of up to 25 miles using just electricity, which covers the total distance most people drive in one day."[18]

28. The figures provided by Green Car Reports, Car Magazine UK, and Inside EVs are consistent with the figures provided by Volvo in its press releases.

*Plaintiff's Purchase*

29. In February 2015, Plaintiff placed an order for a 2016 Volvo XC90 T8 with the Howard Orloff Volvo dealership in Chicago. Plaintiff paid a $1,000 deposit. At that time, Volvo had represented through the written materials and press releases above, and through articles it placed in trade publications, that the T8 would have an all-electric range of 25 miles. Plaintiff reviewed many of those written materials and was aware of Volvo's representations regarding mileage capacity using only electricity before placing an order for the T8. Among other things, Plaintiff reviewed information about the T8 on the Volvo website, as well as the Green Car Reports, Edmunds, Autoweek, and Car Magazine websites. Plaintiff finalized his order on June 30, 2015.

30. The all-electric battery range was important to Plaintiff because with a 25 mile range, he would be able to commute daily in Chicago, and not have to use any gasoline to do so.

31. The price of the T8, excluding sales tax, was $83,475. This price represented a price premium of approximately $20,000 for the hybrid model.

---

[17] http://www.carmagazine.co.uk/car-news/industry-news/volvo/volvo-xc90-t8-claims-49gkm-co2-and-135mpg---with-401bhp-/ (last visited Mar. 31, 2016).
[18] M. Kane, "Volvo Spills Details On XC90 T8 Plug-In Hybrid SUV – Pricing Released, Order Books Open," available at http://insideevs.com/volvo-spills-details-on-xc90-t8-plug-in-hybrid-suv-pricing-released-order-books-open/ (last visited Mar. 31, 2016).

-7-

32. As part of his purchase, Plaintiff paid Volvo $700 for an electric charging station to charge the battery. Plaintiff also paid $2,000 to electricians to install the Volvo charging station in his garage.

33. Plaintiff took delivery of his T8 on January 10, 2016. At that time, he paid the remainder of the balance due on the $83,475 purchase price.

*Actual Performance*

34. Unfortunately, the T8's electric performance does not match Volvo's representations. Instead, Plaintiff has become a victim of a classic bait and switch.

35. Immediately after his purchase in January 2016, Plaintiff began to drive the T8. He was only able to get from 8-10 miles on a full electric charge—a far cry from the 25 mile-plus range repeatedly touted by Volvo.

36. As a result, Plaintiff went back to his Volvo dealer to analyze the problem. The Volvo dealer claimed that the electric range, per the window sticker on the T8 (which of course Plaintiff had no way of knowing about when he pre-ordered his T8), was 13 miles, not 25 miles. The Volvo dealer tested the T8 and was only able to achieve between 14-18 miles with the electric battery while driving the car on the highway, at no more than 40 mph, with all of the safety features, and the heat, turned off. Under normal driving conditions, the dealer was only able to obtain a 10 mile electric range.

37. Obtaining a 10 mile electric range rather than a 17 mile range means that only 58% of the promised range is actually achievable. And as compared to the 25 mile range Volvo represented the T8 would achieve, obtaining 10 miles is only 40% of the promised range.

38. To make matters worse, while only receiving 40%-58% of the promised range is significant, the practical ramifications for Plaintiff and the putative Class are more serious. Plaintiff

purchased the T8 both for the lessened environmental impact and the gas savings by being able to drive the T8 for local commutes and errands without the need to use gasoline. For such purposes, the difference between an 8-10 mile range and a 17-25 mile range is enormous, as for Plaintiff, and many others, gasoline is needed for an everyday commute, which is contrary to Volvo's promises concerning the electric battery range.

39. Plaintiff would not have paid a $20,000 premium for the T8 hybrid engine, as compared to a fully gasoline-powered Volvo XC90, had he known that the actual electric range of the T8 was 8 to 10 miles.

40. Volvo is aware of Plaintiff's problems with the T8, but Volvo has refused to refund the price differential to Plaintiff. Accordingly, Plaintiff is entitled to either a refund for the entire purchase price, or damages for the amount of the diminished value of the T8.

## V.   CLASS ACTION ALLEGATIONS

41. Plaintiff brings Counts II, III and IV, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals who purchased or leased a 2016 Volvo XC90 T8 (the "National Class").

Excluded from the National Class are Defendants, and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the National Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.

42. Plaintiff brings Count I, as set forth below, on behalf of himself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All individuals who purchased or leased a 2016 Volvo XC90 T8 in one of the Consumer Fraud States (the "Multistate Class").[19]

Excluded from the Multistate Class are Defendants, and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Multistate Class; governmental entities; and the judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Multistate Class definition based upon information learned through discovery.

43. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claim on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

44. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all members of the Class is impracticable. To date, Volvo has sold over 600 T8 cars in the United States, and will likely sell thousands more. Thus, there are hundreds of consumers who have been damaged by Volvo's conduct thus far, and thousands more will be damaged if Volvo is permitted to continue to make false representations. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Volvo's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

45. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over

---

[19] The States in the Consumer Fraud Multistate Class are limited to those States with similar consumer fraud laws as applied to the facts of this case: California (Cal. Bus. & Prof. Code §17200, *et seq.*); Florida (Fla. Stat. §501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 502/1, *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws §445.901, *et seq.*); Minnesota (Minn. Stat. §325F.67, *et seq.*); Missouri (Mo. Rev. Stat. 010, *et seq.*); New Jersey (N.J. Stat. §56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §349, *et seq.*); and Washington (Wash. Rev. Code §19.86.010, *et seq.*).

any questions affecting individual Class members, including, without limitation:

 (a) Whether Volvo promised consumers that the T8 would be able to get 17 to 25 miles on an electric battery charge;

 (b) Whether Volvo informed various automobile publications that the T8 would be able to get from 17 to 25 miles on an electric charge;

 (c) Whether Volvo knew, or should have known, that the automobile publications to which it gave information about the T8 would publish that information and provide it to prospective customers;

 (d) Whether Volvo knew, or should have known, when it made representations concerning the electric battery range of the T8 that it was unlikely that any consumer would ever be able to achieve 25 miles, or even 17 miles, of electric range under normal driving conditions;

 (e) Whether Plaintiff and Class members have been injured and the proper measure of their losses as a result of those injuries; and

 (f) Whether Plaintiff and the other Class members are entitled to injunctive or declaratory relief, and the nature of such relief.

46. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, all Class members were comparably injured through the uniform misconduct described above.

47. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his respective interests do not conflict with the interests of the Class members he seeks to represent; he has retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiff intends to prosecute this action vigorously. Class members' interests will be fairly and adequately protected by Plaintiff and his counsel.

48. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Volvo has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive and declaratory relief, as described below.

49.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.     CLAIMS ALLEGED

### COUNT I
### Violation of the Illinois Consumer Fraud Act
### (And Substantially Similar Laws of the Consumer Fraud States)
### (On Behalf of the Multistate Class)

50.     Plaintiff incorporates paragraphs 1 through 49 as if fully set forth herein.

51.     The consumer fraud statutes of the Consumer Fraud States, *supra* note 19, prohibit the use of unfair or deceptive acts or practices in the conduct of trade or commerce. The consumer fraud statutes are to be liberally construed.

52.     Volvo engaged in the following unfair or deceptive acts or practices in the conduct of trade or commerce as described above, including:

    a. Volvo issued press releases that the T8 had an electric battery range of 25 miles, and stated that such a range would cover most drivers' daily driving experiences, when in fact the T8 has a real world range closer to 8 to 10 miles;

    b. Volvo represented, and continues to represent, on its website that the T8 had an electric battery range of 25 miles, and stated that such a range would cover most drivers' daily driving experiences, when in fact the T8 has a real world range closer to 8 to 10 miles;

    c. Volvo provided information to automobile publications, which it knew potential customers would read, that the T8 had an electric battery range of 25 miles, and stated that such a range would cover most drivers' daily driving experiences, when in fact the T8 has a real world range closer to 8 to 10 miles;

    d. Volvo knew or should have known that the electric battery range was not 25 miles, but rather was approximately 8-10 miles, in real world driving conditions.

53. Volvo intended for Plaintiff and the Class to reply upon its representations and promises concerning the electric battery range. Plaintiff and the Class did rely on Volvo's representations in purchasing the T8.

54. Volvo sold its products to the Class in trade or commerce within the United States and the Consumer Fraud States. And as it pertains directly to Plaintiff, Volvo sells it automobiles through dealers located in Illinois, it disseminated its representations (including those concerning the electric battery range) in Illinois, and it shipped its products to Illinois for delivery to Illinois residents.

55. As a result of Defendants' use or employment of the aforementioned unfair deceptive acts or practices, Plaintiff and each of the other members of the Class have sustained damages in an amount to be proven at trial.

56. Defendants' conduct showed malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT II
### Common Law Fraud
### (On Behalf of the National Class)

57. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

58. As described above, Defendants made false statements concerning the electric battery range of the T8 including:

   a. Volvo issued press releases that the T8 had an electric battery range of 25 miles, and stated that such a range would cover most drivers' daily driving experiences, when in fact the T8 has a real world range closer to 8 to 10 miles;

   b. Volvo represented, and continues to represent, on its website that the T8 had an electric battery range of 25 miles, and stated that such a range would cover most drivers' daily driving experiences, when in fact the T8 has a real world range closer to 8 to 10 miles;

   c. Volvo provided information to automobile publications, which it knew potential customers would read, that the T8 had an electric battery range of 25 miles, and stated that such a range would cover most drivers' daily driving experiences, when in fact the T8 has a real world range closer to 8 to 10 miles;

-14-

    d.   Volvo knew or should have known that the electric battery range was not 25 miles, but rather was approximately 8-10 miles, in real world driving conditions.

59.   It was reasonable for Plaintiff and the Class to rely upon Defendants' statements.

60.   Plaintiff and the Class relied upon Defendants' statements in ordering and purchasing the T8.

61.   Defendants made representations concerning the electric battery range for the purpose of inducing Plaintiff and the Class to purchase the T8.

62.   As a result of Defendants' statements, Plaintiff and each of the other members of the Class have sustained damages in an amount to be proven at trial.

63.   Defendants' conduct showed malice, evil motive, or the reckless disregard for the rights of others such that an award of punitive damages is appropriate.

## COUNT III
### Breach of Express Warranty
### (On Behalf of the National Class)

64.   Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

65.   Volvo expressly warranted and guaranteed in its marketing and advertising materials, and in the materials it provided publications for reprint, as more fully described above, that the T8 had an electric battery range of 25 miles and that such range would allow most people, including Plaintiff, to drive daily solely on electricity.

66.   Volvo expressly warranted the T8 in such a manner to the ultimate consumer, including Plaintiff and Class members. Indeed, Volvo's marketing and advertising materials were created specifically for the ultimate consumer and were intentionally disseminated in print and on the internet for the ultimate consumer's consumption.

67. Volvo's express warranty was a part of the basis of the bargain relating to Plaintiff's and Class members' purchase of the T8.

68. Plaintiff has performed all conditions precedent to Volvo's liability under the express warranty.

69. Volvo breached the express warranty by providing T8s to Plaintiff and Class members that do not achieve 25 miles of electric battery range in real world driving conditions.

70. As a result of Volvo's breach, Plaintiff and the Class have been damaged in an amount to be proven at trial, including but not limited to the premium paid for the T8 as compared to the price for a Volvo XC90 without an electric battery.

## COUNT IV
### Unjust Enrichment
### (In the alternative to Count III)
### (On Behalf of the National Class)

71. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 49 above as if fully set forth herein.

72. Volvo sold the T8 to Plaintiff and Class members based on untrue and misleading advertising, including failure to disclose material facts, as stated more fully above. Specifically, Defendants represented that a customer could drive 25 miles solely using electricity without needing to use any gasoline.

73. By selling the T8 based on the untrue representations about the electric battery capacity, Volvo received a benefit from Plaintiff and Class members to which it was not entitled. In particular, Volvo received nearly $20,000 in pricing premiums for every T8 sold as compared to a similarly equipped Volvo XC90 that did not contain an electric battery motor.

74. Volvo knowingly appreciated and accepted this benefit, which resulted and continues to result in an inequity to Plaintiff and Class members.

75. Volvo's retention of such benefit violates the fundamental principles of justice, equity, and good conscience.

76. As a result of Volvo's unjust enrichment, Plaintiff and Class members sustained damages in an amount to be determined at trial. Plaintiff seeks full disgorgement and restitution of Volvo's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## VII. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

## VIII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Complaint, respectfully requests that the Court enter an Order awarding the following relief:

(a) Certifying this action as a class action; designating Plaintiff as Representative for the Class; and appointing the undersigned as Class Counsel;

(b) Awarding compensatory and actual damages, including restitution and disgorgement of Defendants' revenues to Plaintiff and the other Class members generated from the unlawful practices set forth herein;

(c) Enjoining Defendants from continuing the unlawful practices set forth herein;

(d) Awarding attorneys' fees and costs to Plaintiff and the other members of the Class; and

(e) Such other and further relief as the Court deems just and proper.

Dated:  April 21, 2016                                       Respectfully submitted,


                                                             By:    */s/ Todd L. McLawhorn*

                                                             Joseph J. Siprut
                                                             *jsiprut@siprut.com*
                                                             Todd L. McLawhorn
                                                             *tmclawhorn@siprut.com*
                                                             John S. Marrese
                                                             *jmarrese@siprut.com*
                                                             **SIPRUT** PC
                                                             17 North State Street
                                                             Suite 1600
                                                             Chicago, Illinois 60602
                                                             Phone: 312.236.0000
                                                             Fax: 312.754.9616

                                                             *Attorneys For Plaintiff*
                                                             *And The Proposed Putative Class*