IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| XAVIER LAURENS and KHADIJA LAURENS, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLVO CARS OF NORTH AMERICA, LLC, a Delaware Limited Liability Corporation, and VOLVO CAR USA, LLC, a Delaware Limited Liability Corporation, <br><br> Defendants. | Case No. 16 C 4507 <br><br> Judge Harry D. Leinenweber |

### AMENDED MEMORANDUM OPINION AND ORDER

#### I.   BACKGROUND

As described by the Seventh Circuit Court of Appeals, "[t]his case, at base, is about a car purchaser's disappointed expectations." *Laurens v. Volvo Cars of North America, LLC,* 868 F.3d 622, 623 (7th Cir. 2017). This Court had previously granted Defendants' Rule 12(b)(1) Motion to Dismiss based on mootness before the Seventh Circuit reversed, finding that the claims were indeed not moot, and remanded the case. In addition to their Rule 12(b)(1) Motion, Defendants, Volvo Cars of North America, LLC ("VCNA") and Volvo Cars USA, LLC ("VCUSA"), had also filed a Rule 12(b)(6) Motion to Dismiss for failure to state a claim. Because

the Court had found a lack of jurisdiction based on mootness, it did not reach the alternative grounds for dismissal. The Court now considers Defendants' Rule 12(b)(6) Motion.

## II.   FACTUAL BACKGROUND

This dispute centers on the mileage capability of the Volvo Model XC90 T8, a plug-in hybrid sport utility vehicle capable of being operated solely on battery power. Plaintiffs, Xavier and Khadija Laurens, allegedly read certain press release advertisements issued under the name of VCUSA prior to their placing an order for the T8. These releases stated that "at the push of a button the driver can switch to quiet and emission-free city driving on pure electric power where the range will be about 40 kilometers" (Pls' Ex. 1) and touted the vehicle's "pure electric" mode: "In this mode, when the high-voltage battery is fully charged, it serves as the car's sole energy source, powering the electric motor over the rear axle. The XC90 T8 has a range of more than 40 km using just electricity, which covers the total distance most people drive in one day." (Pls' Ex. 2.) Further, according to Plaintiffs' Complaint, subsequent Volvo press releases, a T8 new car brochure, and written information gained from auto trade publications all reaffirmed that the T8 under normal driving conditions would achieve at least 40 kilometers (or its mileage equivalent of 25 miles) on a single charge. (Pls' Exs. 3, 4, 5, and 6). Plaintiffs claim that they relied on this

- 2 -

information when they decided to order the T8 (which commanded a $20,000 premium over the non-hybrid CX 90), when they made a down payment of $1,000, and again eight months later when they paid the $83,495.00 balance due.  Plaintiffs claim that they purchased the T8 "both for the lessened environmental impact and the gas savings." (ECF No. 22 ("FAC") ¶ 41.)

Unfortunately, after taking possession of the new T8, Plaintiffs found that it was only able to travel 8 to 10 miles on a single electric charge.  Due to this discrepancy between the advertised mileage and the actual mileage achieved, they were unable to operate the car in normal daily travel without using gasoline.  They returned the T8 to their Volvo dealer so that the dealer could determine the reason for the large mileage discrepancy.  The dealer initially pointed out to them that the "sticker" on the new Volvo claimed that the T8 had only a 13-mile electric driving range rather than the 25-mile range promised in the advertising material.  The dealer than sought to test drive the T8 but was only able to travel 10 miles in electric mode under normal driving conditions.  The dealer then tested the T8 by driving at no more than 40 mph, with all safety features and the heat turned off, and was able to achieve a distance of between 14 and 18 miles.

Based on the foregoing, Plaintiffs bring a four-count putative class action consisting of Count I, Violation of the

Illinois Consumer Fraud Act (the "CFA"); Count II, Common Law Fraud; Count III, Breach of Express Warranty; and Count IV, Unjust Enrichment. They bring all four counts on behalf of a national class of buyers of the Volvo T8. Defendants have moved to dismiss for failure to state a claim under Rule 12(b)(6).

### III. DISCUSSION

#### A. Counts I and II against Both Defendants

Defendants contend that neither the CFA nor the common law fraud count can stand because Plaintiffs have failed to allege a false representation. Defendants cite *Wiegel v. Stork Craft Mfg., Inc.*, 946 F.Supp.2d 804, 810-12 (N.D. Ill. 2013) for the proposition that accurate statements cannot form the basis of a CFA claim. Defendants make three arguments concerning the accuracy of their advertising materials. First, they point out that the press release in Exhibit 1 sets forth a parenthetical phrase "NEDC driving cycle" in the paragraph immediately preceding the claimed electric driving range, which they maintain is intended to modify the distance claim. Second, they point out that their advertising states the range in kilometers rather than miles. Third, they spotlight to what they assert is a disclaimer located at the very end of the release, which reads: "Descriptions and facts in this press material relate to VolvoCar Group's international car range," and "Vehicle specifications may vary from one country to another and may be altered without prior

notification." Thus, they say, Plaintiffs were on notice that the release really did not invite a buyer to rely on the statement that "the range will be around 40 kilometers." Defendants detail how the NEDC testing methods differ from the EPA methods, which they claim could account for the discrepancy, and they then fault Plaintiffs for failing to allege in their complaint that the NEDC testing results were false.

Plaintiffs, of course, take issue with these arguments as to why the advertised 40-kilometer diving range was not a false representation. They point out that Defendants ignore all of the marketing materials that Defendants issued in the United States to entice consumers to buy the T8. (*See,* Exhibits 1 through 6.) All of these marketing materials contain mileage claims that Plaintiffs' Volvo dealer was unable to come close to matching. They also point out that it does not take a genius to convert 40 kilometers to 25 miles.

It appears to the Court at this stage of the case that the Plaintiffs have the better of the argument on Counts I and II. First, all of the cases Defendants cite concerning the truth of particular claims were decided either at the summary judgment stage or after trial. This is particularly important here because at this stage prior to discovery, Plaintiffs are not privy to the NEDC testing so as to prove or disprove if and why the European T8 model - as opposed to the one available to purchasers in the

United States – could truly go 40 kilometers without a recharge. Further, the press releases do not state that the 40-kilometer distance was obtained through the "NEDC driving cycle," or even what the NEDC driving cycle is. This parenthetical phrase is located in a paragraph regarding reduced emissions and does not ever refer to mileage. Moreover, the so-called "disclaimer" statement is located at the very end of the release and refers to the "VolvoCar Group's international car range" without defining what this means. Fairly read, "international car range" appears to refer to the fact that certain option features may not be universally available and does not even apply at all to electric mileage range. The purported disclaimer's statement that "specifications" vary from one country to another appears to refer to possible variations implicated by climate and local regulations rather than electric mileage. In other words, the disclaimer neither contradicts nor modifies the 40-kilometer mileage claim.

Defendants also contend that the fraud and CFA counts should be dismissed pursuant to the heightened pleading standards of Rule 9(b). Defendants are partially correct. While Rule 8 applies to Count I under the CFA for unfair conduct or practices, Rule 9(b) applies to Count II, Common Law Fraud. *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Financing Servs., Inc.*, 536 F.3d 663, 670 (7th Cir. 2008). Consequently, with respect to Count I, the only question is whether "the allegations raise a

right to relief above the speculative level." *Tamayo v. Blagojevich,* 526 F.3d 1074, 1084 (7th Cir. 2008) (quotation omitted). However, Count II requires the Rule 9(b) "who, what, when, where, and how." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). With respect to VolvoUSA, whose name is on the press release, Plaintiffs appear to have satisfied Rule 9(b). For example, VolvoUSA is the "who"; the claim that the T8 will go 40 kilometers on a single charge is the "what"; October 21, 2014, the date of the press release in Ex. 1, is the "when"; the United States, where the press release was published, is the "where"; and disseminating the press release in the United States is the "how". However, the Complaint fails to satisfy Rule 9(b) with regard to VCNA. Plaintiffs claim that VCNA can be held liable because of its corporate affiliation with VCUSA (it was VCUSA's sole member). However, this is not sufficient under Rule 9(b). *Goren v. New Vision Int'l, Inc.,* 156 F.3d 721, 730 (7th Cir. 1998) (finding it necessary to allege "facts sufficient to notify the defendants of their purported role in the scheme") (quotation omitted).

**B. Count III - Breach of Express Warranty against VCUSA**

Count III alleges that, by asserting in press releases and advertising materials that the T8 would achieve 25 miles on a single charge, VCUSA created an express warranty that was violated with respect to Plaintiffs' T8. To create an express warranty under Section 2-313 of the Illinois Commercial Code (26 ILCS 2-

313), a seller must (1) make an affirmation of fact or promise that (2) relates to the goods and (3) becomes part of the basis for the bargain between the parties. The seller warrants that the goods will conform to the affirmation of fact or promise. A seller's statement of opinion or commendation, on the other hand, does not create an express warranty. The difference is whether the affirmation of fact or promise can be demonstrated to be false. *Royal Business Machines, Inc. v. Lorraine Corp.*, 633 F.2d 34, 42 (7th Cir. 1980). Whether a seller made a promise amounting to a warranty is normally a question of fact. *Ibid.* Here, the "promise" that a driver would be able to drive 25 miles on a single charge is subject to proof and could therefore constitute an express warranty. If, in fact, the T8 could only achieve 8 to 10 miles, as opposed to 25, this could be considered a violation of an express warranty, and the allegation clearly rises above the speculative level.

### C. Count IV - Unjust Enrichment against VCUSA

The basis for Defendants' Motion to Dismiss the unjust enrichment claim is their argument that Plaintiffs have not been able to allege a claim under the CFA. Insofar as the Court has not dismissed the CFA claim, the Motion to Dismiss is denied in relevant part. *Leiner v. Johnson & Johnson Consumer Companies, Inc.*, 215 F.Supp.3d 670, 673 (N.D. Ill. 2016).

## IV.   CONCLUSION

For the reasons stated herein, the Court rules as follows:

1.   The Motion to Dismiss Count I is denied as to both Defendants;

2.   The Motion to Dismiss Count II is denied as to VCUSA and granted as to VCNA without prejudice;

3.   The Motion to Dismiss Count III is denied; and

4.   The Motion to Dismiss Count IV is denied.

**IT IS SO ORDERED.**

                                             _____
                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: November 27, 2017