<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

XAVIER LAURENS and KHADIJA
LAURENS, individually and on behalf of all
others similarly situated,

        *Plaintiffs*,

    v.

VOLVO CAR USA, LLC, a Delaware limited
liability corporation,

        *Defendant*.

Civil Action No. 2:18-cv-08798-JMV-CLW

<u>OPINION</u>

<u>John Michael Vazquez, U.S.D.J.</u>

Plaintiff Khadija Laurens[1] seeks to certify two classes: (1) a class of individuals in several states for violations of state consumer fraud statutes and (2) a class of individuals nationwide for claims of common law fraud and unjust enrichment, each against Defendant Volvo Car USA, LLC ("VCUSA"). Plaintiff alleges that VCUSA fraudulently misrepresented the electric driving range of one its vehicles. Presently before the Court is Plaintiff's motion for class certification (D.E. 128) and Defendant's motion to strike an expert report from the motion (D.E. 141). The Court reviewed the parties' submissions[2] and considered the motions without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the following reasons,

---

[1] Xavier Laurens is no longer a Plaintiff in this case, and Volvo Cars of North America, LLC is no longer a Defendant.

[2] Plaintiff's brief in support of her motion to certify the classes (D.E. 128) is referred to as "Pl. Brf."; Defendant's brief in opposition (D.E. 144) is referred to as "Def. Brf."; Plaintiff's reply brief (D.E. 148) is referred to as "Pl. Reply"; Defendant's sur-reply (D.E. 155-1) is referred to as "Def. Sur-Reply".

Plaintiff's motion for class certification is **DENIED** and Defendant's motion to strike is **DENIED**.

## I.  BACKGROUND[3]

Volvo Car Corporation ("VCC") manufactures vehicles in Sweden.  VCUSA Dep. 31:6-7, D.E. 128, Ex. 1.  Defendant VCUSA purchases vehicles from VCC and sells them to dealerships in the United States.  *Id.* at 155:21-24.  In 2014, VCC planned to launch a new sports utility vehicle, the XC90.  FAC ¶ 13.  The XC90 would be offered in two models — the "T6" and the "T8".  FAC, Ex. 4 at 26-27.  The T8 featured a hybrid engine and the ability to switch to "pure electric" driving mode.  FAC, Ex. 4 at 27.

VCUSA assisted the VCC communications team in preparing the T8's launch.  VCUSA Dep. 34:9-14.  Marketing for the T8 began on October 1, 2014, when VCUSA issued a press release announcing that the T6 and T8 would debut at the Paris Motor Show the following day. D.E. 128, Ex. 4.  On October 21, 2014, VCUSA issued a press release in the United States to inform consumers about the new T8.  FAC ¶ 15.  The press release explained that the T8's pure electric range would be "around 40 kilometers."  FAC, Ex. 1.  Forty kilometers corresponds to roughly 25 miles.  Similarly, on December 8, 2014, VCUSA issued a press release stating that the T8 "has a range of more than 40km using just electricity, which covers the total distance most people drive in one day."  FAC, Ex. 2.

At the time of the press releases, however, the T8's pure electric range had not yet been tested by the U.S. Environmental Protection Agency ("EPA").  Buffalino Dep. at 11:8-17, D. E. 128, Ex. 3.  Different governments mandate different vehicle testing regimes.  In the European Union, vehicle manufacturers must provide fuel economy and range information generated under

---

[3] The facts are derived from Plaintiff's First Amended Complaint ("FAC"), D.E. 22, and the exhibits attached to the parties' briefs, D.E. 128, 144, 148.

the New European Driving Cycle ("NEDC") testing methodology. United Nations Economic Commission for Europe Reg. No. 101. In the United States, vehicles undergo testing pursuant to the methodology promulgated by the EPA. Buffalino Dep. at 10:15-20. The two tests – that of the EPA and the NEDC – are "completely different." VCUSA Dep. at 69:14-21. VCC began testing according to EPA specifications in June of 2015. *Id.* at 12:6-9.

Nevertheless, on April 16, 2015 VCUSA issued another press release for the T8, stating that "[p]reliminary testing based on EPA criteria produced an estimated range of 17 miles using just electricity, which represents a high percentage of drivers' typical daily usage." FAC, Ex. 3. Similarly, VCUSA provided a press release on April 30, 2015, which boasted that "[n]o other SUV in this class can deliver 43km of pure electric range." FAC, Ex. 5. The April 30 press release did, however, note that "[a]ll figures are based on the NEDC driving cycle for hybrids." *Id.* VCUSA issued another press release on January 21, 2016, again stating that the T8 "has a range of more than 40km using just electricity, which covers the total distance many people drive in one day." FAC, Ex. 6.

In addition to the press releases, VCUSA communicated marketing information to individual car dealerships. Included was a product guide, which dealers use to understand what to tell customers about new vehicles. Grzesinski Dep. at 60:3-10, D.E. 128, Ex. 13. The guide encouraged dealers to promote the advertised electric range to consumers but to understand that experience has shown it is very difficult to replicate more than 80% of the advertised certified range.[4] D.E. 128, Ex. 16 at 1. Also included was a brochure that explained that the T8 had an estimated pure electric range of 17 miles. D.E. 128, Ex. 17 at 1. Additionally, dealers were

---

[4] Plaintiff asserts that the product guide promoted an electric range of 17 miles. Pl. Brf. at 12. The exhibit provided to the Court does not contain this information.

informed that the pure electric range would be a selling point for consumers.  Williamson Dep. at 27:19-23, D.E. 128, Ex. 15.

VCUSA does not dictate the price at which dealers must sell their vehicles.  It does, however, generate a Manufacturer's Suggested Retail Price ("MSRP").  VCUSA Dep. at 223:11-18.  The T8's MSRP was $68,100.  *Id.* at 223:8-10.  The T6's MSRP was $55,400.  D.E. 128, Ex. 16.  According to the aftersales market manager for VCUSA, the T8 and the T6 are virtually identical but for the T8's pure electric capability.  Williamson Dep. at 8:17-22; 27:13-15.

The EPA ultimately tested the T8 in September of 2015.  Buffalino Dep. at 23:11-14.  *Id.* at 22:9-21.  In December of 2015, the EPA certified that the T8 had a pure electric range of 0 to 13 miles.  VCUSA Dep. at 75:14-20.  This range reflects the fact that any individual vehicle's range is subject to a number of variables, not all of which can be replicated during EPA testing.  *Id.* at 75: 22-76:19.  Additionally, federal law requires that each new vehicle sold in the United States feature this range on a label or sticker on the window, commonly known as the "Monroney Sticker."  15 U.S.C. §§ 1231-1233.

Plaintiff and proposed class representative Khadija Laurens first learned about the T8 from her husband, Xavier Laurens.  Khadija Dep. at 24:14-19.  He explained to her that the T8 was a hybrid with a 25-mile electric range.  *Id.*  In February of 2015, Plaintiff pre-ordered a T8 from a Volvo dealership in Chicago.  FAC ¶ 30.  The car arrived on January 10, 2016, and Plaintiff paid a total of $83,475.  FAC ¶ 35.  Plaintiff's actual experience with the car, however, revealed that the T8 did not deliver 25 miles of pure electric range.  Khadija and Xavier were only able to obtain an 8 to 10-mile range.  FAC ¶ 38.

A Complaint was first filed by Xavier Laurens in the United States District Court for the Northern District of Illinois on April 21, 2016.  D.E. 1.  Xavier filed an Amended Complaint on

4

June 29, 2016.  D.E. 22.  Xavier, however, is no longer a plaintiff, and Khadija proceeds as the named plaintiff for class certification purposes.[5]  The case was transferred to this district on May 3, 2018.  D.E. 86.  On February 21, 2020, Plaintiff filed the instant motion to certify a class.  D.E. 128.  She seeks to certify the following two separate classes:

> 1.  For Count I (Violation of State Consumer Fraud Statutes), all individuals who purchased the T8 in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, and the State of Washington (the "Multistate Class").[6]
>
> 2.  For Count II (Common Law Fraud) and Count IV (Unjust Enrichment), all individuals who purchased the T8 (the "National Class").[7]

Pl. Brf. at 14.  Defendant VCUSA filed opposition, D.E. 144, to which Plaintiff replied, D.E. 148.

---

[5] The Complaint originally ascribed the purchase to Xavier.  D.E. 1.  Volvo disputed his standing, because Khadija's name appeared on the T8's purchase agreement. The Court of Appeals for the Seventh Circuit ultimately concluded that Xavier had not pled an injury-in-fact.  D.E. 55 at 7.

[6] Plaintiff excludes the following from the proposed class:

> Excluded from the Multistate Class is Defendant VCUSA, and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Multistate Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Moreover, although in the First Amended Complaint Laurens defined the Multistate Class to include persons who leased the Class Vehicle, all lessors are excluded from the proposed definition. She also omits purchasers in Missouri from the Multistate Class.

D.E. 128 at 14 n. 1.

[7] Plaintiff excludes the following from this proposed class:

> Excluded from the National Class is Defendant VCUSA, and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the National Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Moreover, although in the First Amended Complaint Laurens defined the National Class to include persons who leased the Class Vehicle, all lessees are excluded from the proposed definition.

D.E. 128 at 14 n. 1.

In addition, VCUSA filed a motion to strike the declaration of Plaintiff's expert, Charles Lawson, D.E. 141, which Plaintiff opposed, D.E. 147, and to which Defendant replied, D.E. 149.

## II. CLASS CERTIFICATION STANDARD

Federal Rule of Civil Procedure 23 governs class actions. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). "[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Id.* at 590 (citing Fed. R. Civ. P. 23(a)-(b)). Plaintiff first bears the burden of showing that the proposed class satisfies the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These four prongs are often referred to as numerosity, commonality, typicality, and adequacy. *See, e.g., Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 165 (3d Cir. 2013).

Plaintiff also must show that proposed class satisfies Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590. Here, Plaintiff argues that the putative class meets the requirements of Rule 23(b)(3). Under Rule 23(b)(3), a plaintiff must establish the following:

> [T]he questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in

managing a class action.

Fed. R. Civ. P. 23(b)(3).

Pursuant to Rule 23(c)(1)(A), a court "must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The decision to certify a class or classes is left to the discretion of the court. *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), *as amended* (Jan. 16, 2009). "The requirements set out in Rule 23 are not mere pleading rules." *Marcus*, 687 F.3d at 591 (citing *Hydrogen Peroxide*, 552 F.3d at 316). "The party seeking certification bears the burden of establishing each element of Rule 23 by a preponderance of the evidence." *Id.* (citing *Hydrogen Peroxide*, 552 F.3d at 307). "A party's assurance to the court that it intends or plans to meet the requirements is insufficient." *Hydrogen Peroxide*, 552 F.3d at 318.

The Third Circuit emphasizes that "actual, not presumed, conformance with Rule 23 requirements is essential." *Marcus*, 687 F.3d at 591 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)) (internal quotations omitted). "To determine whether there is actual conformance with Rule 23, a district court must conduct a 'rigorous analysis' of the evidence and arguments put forth." *Id.* (quoting *Falcon*, 457 U.S. at 161). This "rigorous analysis" requires a district court to "resolve all factual or legal disputes relevant to class certification, even if they overlap with the merits – including disputes touching on elements of the cause of action." *Id.* Therefore, a district court "may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Hydrogen Peroxide*, 552 F.3d at 320.

### III.    ANALYSIS

#### A.    Rule 23(a) Requirements

##### 1.    Numerosity

"No single magic number exists" to meet the numerosity requirement. *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 139 (D.N.J. 2009). Yet, "the Third Circuit has previously held that the numerosity requirement will generally be satisfied 'if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40.'" *Id.* (quoting *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001)).

Plaintiff contends that the numerosity requirement is easily satisfied. As to the Nationwide class, 2,226 T8s were sold to dealers nationwide, of which 2,103 were turned over to customers in 2016 alone. VCUSA Dep. at 229:6-23. As to the Multistate class, at least 1,408 T8s were sold in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, New Jersey, New York, and Washington in 2016. While it is not clear from the record how many of these vehicles were sold rather than leased, VCUSA does not dispute that Plaintiff could satisfy the numerosity requirement for either proposed class. Accordingly, the Court finds that the numerosity requirement is satisfied.

##### 2.    Commonality

"Rule 23(a)(2) requires Plaintiffs to demonstrate that 'there are questions of law or fact common to the class.'" *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 487 (3d Cir. 2018) (quoting Fed. R. Civ. P. 23(a)(2)). However, Rule 23(a)(2)'s "language is easy to misread, since any competently crafted class complaint literally raises common questions." *Id.* at 487 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation omitted)). "A complaint's mere recital of questions that happen to be shared by class members" is insufficient; instead, "'[c]ommonality requires the plaintiff to demonstrate that the class members have suffered

the same injury.'" *Id.* (alterations in original) (quoting *Dukes*, 564 U.S. at 349-50) (internal quotation omitted). "What matters . . . is not the raising of common 'questions' . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (citation omitted). In other words, Plaintiff's claims "must depend upon a common contention" whereby "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* In analyzing commonality, a court must focus on whether the defendant's conduct is common as to all class members. *Reyes v. Netdeposit, LLC*, 802 F. 3d 469, 486 (3d Cir. 2015).

Plaintiff points to a number of common questions: "(1) whether VCUSA engaged in deception when it represented that the [T8] had a 25 mile electric range; (2) whether VCUSA had knowledge of the [T8]'s actual range when it made its statements; (3) whether VCUSA instructed dealers to provide consumers with the inaccurate electric range; and (4) whether consumers sustained damages from VCUSA's misrepresentations." Pl. Brf. at 18-19. Plaintiff additionally argues that the commonality requirement is "satisfied if the named plaintiffs share at least one common fact or law with the grievances of the prospective class." *Id.* at 18 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F. 3d 283, 311 (3d Cir. 1998)).

Defendant does not dispute the commonality requirement, and instead focuses on the predominance requirement, which the Court discusses below. Plaintiff has made a sufficient showing that common questions exist. As to each class member, Defendant's alleged conduct was the same—Defendant issued allegedly misleading press releases and otherwise misled consumers into believing that the T8's pure electric range was greater than it was. The questions of whether Defendant knew that these representations were false and intended to deceive consumers are

9

likewise common ones.  The presence of these common questions is sufficient for Rule 23(a) purposes.

These common questions apply to the Multistate and National Classes.  For the Multistate Class, Plaintiff indicates that each state's consumer fraud statute requires a showing that Defendant committed a deceptive act.[8]  Pl. Reply, Ex. 2.  Whether the various representations regarding electric range were deceptive is therefore a question common to all Multistate Class members.

Through the National Class, Plaintiff seeks resolution of two causes of action.  The first is common law fraud.  Plaintiff represents that for common law fraud, each state requires a finding that the defendant made a false statement of fact.  Pl. Reply Brf., Ex. 3.  According to Plaintiff, Defendant falsely stated that the T8's pure electric range was 25 miles (or in some instances 17 miles).  VCUSA, in arguing about the predominance requirement of Rule 23(b), notes that the truth or falsity of that fact must be measured on an individual basis.  The "fact" of electric range, Defendant asserts, differs for everyone based on a number of variables and some consumers may have been able to achieve a 17 or 25-mile range.  Plaintiff responds that this question is susceptible to common proof because there is in fact only one range — the 0 to 13 range certified by the EPA. In support, Plaintiff indicates the following:

> According to VCUSA, a vehicle can end up offering different electric ranges under different conditions, and therefore, there is simply no way to know exactly what kind of electric range each

[8] Terminology surrounding this deceptive act differs somewhat among the states included in the Multistate Class.  For example, in New Jersey, a plaintiff must demonstrate "unlawful conduct." *D'Agostino v. Maldonado*, 78 A. 3d 527, 536 (N.J. 2013).  "Deception" is one example of unlawful conduct.  N.J. Stat. Ann. § 56:8-2.  This difference in terminology, as well as other substantive differences in the underlying state laws, could raise an issue as to commonality in light of the Supreme Court's discussion in *Dukes*.  *Dukes*, 564 U.S. at 350.  In other words, while Defendant's alleged misconduct as to each class member is the same or substantially similar, the legal effect of such conduct could be different based on the applicable substantive law.  The same is potentially true of the National Class.  However, because Defendant does not challenge commonality, the Court addresses these concerns when reviewing predominance.

> consumer received.  VCUSA misses the point.  In truth, there is only *one* electric range for the [T8], and that is whatever the EPA says it is.  It is not – as VCUSA would have this Court believe – the actual distance any individual vehicle is actually capable of travelling on one full electric charge.
>
> . . . .
>
> As such, consumers all had the expectation that, when VCUSA stated the [T8]'s electric range, it was actually stating an "advertised/certified" range (to use VCUSA's own words) that was actually certified by the regulator that applied in the U.S. (the EPA).
>
> . . . .
>
> Here, VCUSA represented its "advertised/certified" electric range as "17 miles" and "25 miles," but the putative class members *all* received an EPA certified electric range of 0 to 13 miles, regardless of the actual distance their individual cars were capable of traveling on one full electric charge.  Thus, every class member suffered the same loss or harm – the inability to properly comparison shop due to VCUSA's falsified "advertised/certified" that resulted in the purchase of a [T8] with an MSRP that accounted for that inflated, false range.

Pl. Reply at 11-12 (emphases in original).  This articulation of the alleged loss or damage did not appear in Plaintiff's brief for class certification or in her Amended Complaint.  Her Amended Complaint focused on the fact that Plaintiff personally received only 8 to 10 miles of pure electric mileage per charge.  *See* FAC ¶¶ 38, 42.  As to the class members in general, Plaintiff alleged that VCUSA represented a 25-mile range "when in fact the T8 has a real world range closer to 8 to 10 miles."  FAC ¶ 55.

Thus, for purposes of certification, Plaintiff is proposing a new theory of harm to show that the claim is susceptible to common proof.  Defendant, in sur-reply, argues that this new characterization of the harm mischaracterizes the representations VCUSA made.[9]  Defendant

---

[9] Defendant filed a motion for leave to file a sur-reply, D.E. 155, arguing that Plaintiff raised a number of new arguments in her reply brief to which Defendant ought to be permitted to respond.  The Court agrees that this argument was not clearly articulated in the motion for class certification and was effectively newly raised in the reply brief.  Accordingly, the Court grants Defendant's motion, deems the sur-reply filed, D.E. 155-1, and considers this argument, as well as responses to other arguments that were made in the first time in reply.  L. Civ. R. 7.1(d)(6).

claims that none of its materials promised "that the EPA would eventually certify the electric range at any specific value." Def. Sur-Reply at 8. Defendant continues that the EPA's own guidance rejects the assertion that each car has only one electric range and "makes clear that [the EPA] certified range is *not* a representation of the electric range a particular vehicle will experience when driven by a particular driver. It is impossible for there to be only one range." *Id.* at 9 (emphasis in original).

In short, VCUSA makes two arguments. The first anticipates the argument on the merits, claiming that Defendant did not actually promise that the EPA would certify a particular range. Whether or not that is true, all Plaintiff needs to show at this stage is that common evidence *could* show that VCUSA made those promises, not that VCUSA actually did make those promises. The second argument is a restatement of Defendant's position that truth or falsity will require individualized inquiries. According to Plaintiff's theory, the EPA range need not be reflective of the actual range a consumer could achieve, because the consumer is harmed by the fact that the EPA range is a component of the MSRP price. For common law fraud, Plaintiff must demonstrate a representation that is false. Here, the alleged representation is that the T8 would achieve an EPA certified range of 17 or 25 miles. Whether VCUSA did in fact make that representation is a question common to all class members. The common law fraud claim for the National Class therefore presents a question capable of resolution by common proof.

As to the unjust enrichment claim, the common questions discussed above are also relevant to the analysis. Additional common questions are whether VCUSA retained a benefit from the class members' purchase of the T8 and whether VCUSA had a contractual relationship with the class members.[10]

---

[10] Plaintiff also cites, in other contexts, to *In re Tropicana*, which found commonality for an unjust

Common questions therefore exist for each cause of action brought by the putative Multistate and National Classes.  Commonality is satisfied for both proposed classes.

### 3.  Typicality

"[T]ypicality demands that 'the claims or defenses of the representative parties are typical of the claims or defenses of the class.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001), *as amended* (Oct. 16, 2001) (quoting Fed. R. Civ. P. 23(a)(3)).  In other words, the lead plaintiff's claims must be "comparably central" to the claims of the absent parties.  *Id.* at 183.  This ensures that "the interests of the class and the class representatives are aligned 'so that the latter will work to benefit the entire class through the pursuit of their own goals.'"  *Id.* at 182-83 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998)).

The typicality requirement is "intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees."  *Id.* at 183.  However, all plaintiffs are not required to share identical factual circumstances – the requirement only mandates that a named plaintiff's individual circumstances cannot be "markedly different" from the other class members.  *Id.*  "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences."  *Id.* at 183-84.  For example, "a claim framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice."  *Id.* at 184 (citing *Baby Neal ex rel. Kanter v. Casey*, 43 F.3d 48, 63 (3d Cir. 1994)).  The Third Circuit has reasoned that the typicality requirement "does not mandate that all putative class members share identical claims, because even relatively pronounced factual differences will

---

enrichment claim alongside fraud claims, even though common issues did not ultimately predominate.  *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-07382, 2018 WL 497071, at *3 (D.N.J. Jan. 22, 2018).

generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *Id.* (internal quotations and citations omitted).

Plaintiff asserts that her claims are generally the same as those of the members of both proposed classes. As to the Multistate Class, she argues that the consumer fraud claims under the different state statutes "involve essentially the same legal issues – *i.e.*, whether VCUSA engaged in unfair or deceptive acts or practices by representing that the [T8] had an electric range far better than it actually had; and whether a reduction of that electric range caused class members to suffer damages." Pl. Brf. at 21. As to the National Class, Plaintiff continues, "the legal issues include whether VCUSA made actionable fraudulent misrepresentations, and whether VCUSA was unjustly enriched by selling the [T8] for more than a fair market value related to its actual performance." *Id.* at 22.

Defendant responds that Plaintiff herself is subject to multiple unique defenses that render her claims atypical. Defendant notes that Plaintiff never viewed any of the misrepresentations at issue, her T8's performance and pure electric range were unique to her, she was offered a full refund prior to bringing suit, and she only has standing to bring claims under Illinois law. Def. Brf. at 47-51.

VCUSA's conduct towards Plaintiff was the same, or substantially the same, as its conduct towards all other putative class members. The alleged misrepresentations at issue were made in press releases and communications with dealers. Plaintiff brings the same kind of claims as other class members – that VCUSA made misrepresentations as to the T8's pure electric range, and she was harmed because of them. Accordingly, factual differences between Plaintiff's experience and the experiences of the other allegedly harmed consumers do not render her claims atypical. *See*

*Marcus*, 687 F.3d at 598-99 (finding that typicality was satisfied where alleged misrepresentations and omissions pertained to numerous tire models, sizes and vehicles); *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, No. 11-07382, 2018 WL 497071, at *3 (D.N.J. Jan. 22, 2018) ("Individual purchasing decisions, however, do not make Plaintiffs' claims atypical.  Each of the named Plaintiffs' claims arise from their individual purchases of TPP and the injuries alleged universally arise from Defendant's conduct.").

Defendant cites a case from the Northern District of California in which the named plaintiff failed to prove typicality.  *Deitz v. Comcast Corp.*, No. 06-06352, 2007 WL 2015440, at * 5 (N.D. Cal. July 11, 2007).  There, the court observed that the plaintiff would be subject to a unique defense "that he did not read, and thus could not have relied on, any of the misstatements."  *Id.*  In addition, the plaintiff in *Deitz* sought to certify a class of customers who had not affirmatively requested a cable converter box, while he himself *did* affirmatively request a converter box.  *Id.* Accordingly, the court concluded that the defendant could raise unique defenses against that plaintiff in particular, which made the lead plaintiff not typical for the class he sought to represent. *Id.*  By contrast, VCUSA's argument that Khadija was not exposed to the representations is unlikely to be unique.  To the contrary, one of VCUSA's principal arguments is that there is no evidence of class-wide exposure to the misrepresentations.  *See* Def. Brf. at 18-23.  VCUSA seeks to apply this defense to the class members generally, not Khadija in particular.  But more importantly, unlike the plaintiff in *Deitz*, Khadija avers that she was exposed to the representations through Xavier.

VCUSA's other arguments against typicality are also unavailing.  It argues that Khadija's experience with her T8 and the pure electric range she was able to receive are unique to her, as is the case for every consumer, since a variety of factors impact pure electric range, such as whether

the car is driven in the city and whether certain energy-diverting functions are used while driving. To VCUSA, this means that the question of whether the various representations as to electric range were actually false must be determined on an individual basis.  As discussed above in the context of commonality, Plaintiff's theory of harm means that each class member was harmed irrespective of what pure electric range they were able to achieve.  But the defense is not unique to Plaintiff -- VCUSA intends to invoke it as to every class member, not just Plaintiff.  Moreover, the precise range that each class member was able to achieve is immaterial if Plaintiff establishes that VCUSA made misrepresentations as to the T8's electric range.  *See Marcus*, 687 F.3d at 598-99 (finding that typicality was met where "[t]he parties agree that different tire models and sizes, and different vehicles, have different performance characteristics, compositions, designs, purposes, and uses" but the alleged misrepresentations and problems amongst the products included in the putative class did not differ significantly).

VCUSA also claims that Plaintiff is uniquely susceptible to a defense based on failure to mitigate because she declined to accept a refund.  Even if the possibility of this defense could render her claims atypical, Defendant has not established that the mitigation defense would be available for these fraud and unjust enrichment claims.  Defendant cites to a pair of out-of-circuit cases, neither of which involved class certification.  In addition, neither case requires the conclusion that this Plaintiff cannot succeed on a fraud or unjust enrichment theory due to her purported failure to mitigate.[11]  But on a more basic level, the duty to mitigate damages requires

---

[11] One case cited by Defendant is a decision on a motion to strike an affirmative defense. *FAST SRL v. Direct Connection Travel LLC*, 330 F.R.D. 315 (S.D. Fla. 2018).  The other addresses a motion to dismiss for lack of subject-matter jurisdiction, in which the court mentioned that the plaintiff's loss was mooted by defendant's refund offer, which meant he had suffered no injury under Oregon law and lacked standing.  *Hamilton v. Gen. Mills, Inc.*, No. 16-382, 2016 WL 6542840, at *1 (D. Ore. Nov. 2, 2016).  Neither case has any bearing on whether Plaintiff, subject to the law of the state of Illinois, had a duty to mitigate or whether her refusal to accept a refund

that an injured party take steps to prevent *further* loss.  *See Caufield v. Ctr. Area. Sch. Dist.*, 133 F. App'x 4, 10 (3d Cir. 2005) (stating that a plaintiff's damages may be reduced in an employment discrimination case if she "failed to use reasonable diligence in attempting to secure" a "substantially equivalent position"); *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 920-21 (N.D. Ill. 2009) (explaining that once a party knows the other will not perform his contractual duties, the injured party has a duty to take appropriate affirmative steps to avoid further loss).  Here, Plaintiff's injury occurred when she purchased the T8.  Her refusal to accept a refund after the purchase would not have lowered ongoing damages.  The current situation is more akin to rejecting a settlement offer, which the Supreme Court explained, has no legal effect in the class action context.  *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 162 (2016); *see also Laurens v. Volvo Cars of N. Am.*, 868 F.3d 622, 628 (7th Cir. 2017) (concluding that Defendant's refund offer did not strip Khadija of standing).

Finally, Defendant points to a case authored by the undersigned, which purportedly held that Khadija cannot assert claims on behalf of residents of other states because she cannot bring claims under any law other than that of Illinois.  Def. Brf. at 50-51.  The cited case is inapposite— the plaintiff there sought to certify a multistate class consisting of individuals from 31 states, but the plaintiff himself was not from one of those 31 states.  *Semeran v. Blackberry Corp.*, No. 15-750, 2016 WL 3647966, at *6 (D.N.J. July 6, 2016).  Thus, the issue in *Semeran* was that a plaintiff cannot represent a class of which he is not a part.  Khadija, by contrast, would be a member of both the proposed Multistate Class and the National Class – as the classes are currently proposed by Khadija.

Khadija undoubtedly has standing to pursue her own claims and the claims of unnamed

---

means she neglected that duty.

class members in Illinois. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F. 3d 353, 369 (3d Cir. 2015) ("In sum, so long as a named class representative has standing, a class action presents a valid "case or controversy" under Article III.").  At the same time, Khadija seeks to be the lead plaintiff for class members who are not located in Illinois and asserts state law claims in states where she did not suffer an injury.  The Court has doubts as to whether Khadija has standing to assert state-law based claims for which she is not a resident.  *See Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp.3d 194, 223 (D.N.J. 2020) (dismissing nationwide unjust enrichment and fraud claims for lack of standing while allowing claims to proceed as to individual plaintiffs' home states).  But because Defendant does not substantively address this argument with relevant authority, the Court will address the remaining Rule 23 requirements.[12]

Accordingly, the Court concludes that the typicality prong is satisfied for both classes because Defendant's conduct was identical towards Plaintiff as towards other putative class members and because Plaintiff is not subject to any significant unique defenses.

### 4.  Adequacy

In reviewing the adequacy element, a court must decide whether the class representative "has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class." *Sapir v. Averback*, No. 14-07331, 2015 WL 858283, at *3 (D.N.J. Feb. 26, 2015) (citing *Falcon*, 457 U.S. at 157 n. 13).  "Adequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the

---

[12] The Court is also cognizant of the fact that *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp.3d 194, 223 (D.N.J. 2020) was decided after Defendant filed its opposition to the instant motion.

class." *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).  The "linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F. 3d 170, 183 (3d Cir. 2015).  Adequacy functions as a "catch-all requirement" that "tend[s] to merge with the commonality and typicality criteria of Rule 23(a)." *Newton*, 259 F.3d at 185 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).  "Whether a party adequately represents a class depends on all the circumstances of the particular case." *Wetzel*, 508 F.2d 247.

Plaintiff argues that she has no conflicts of interest that would affect her representation of other class members and that her counsel is experienced in bringing class actions.  Pl. Brf. at 22-24.  Defendant focuses on Plaintiff's deposition and argues that she cannot be an adequate representative because she has little understanding of her own claims and her role in the litigation.  Def. Brf. at 44-47.  For example, Defendant shows that Plaintiff's deposition testimony reveals she only heard about the misrepresentations from her husband, Xavier.  But Plaintiff is not necessarily required to have seen the representations directly.  *See, e.g.*, *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009) (explaining that under the Illinois Consumer Fraud Act, it may be sufficient if the plaintiff viewed the communication or advertising indirectly).  Defendant also indicates that Plaintiff appeared to have a limited understanding of who was in the class and could not articulate what damages she sought.  In short, Defendant apparently focuses its comments on Plaintiff's lack of *legal* knowledge of class actions.

The Third Circuit has been clear that adequacy is about alignment of interests.  *See Dewey*, 681 F.3d at 183 (recognizing that "the linchpin of the adequacy requirements if the alignment of interests and incentives between the representative plaintiffs and the rest of the class").  Plaintiff was one of the consumers allegedly harmed by VCUSA's misrepresentations.  There is no

indication of any conflict of interest or any other reason why Plaintiff would not stand for the interests of other class members. She is not an attorney and should not expected to be able to speak fluently about the complicated legal issues in this action.

Defendant cites to a case from within this Circuit, which ruled that "[t]o satisfy the requirement of adequate representation, a class representative must have at least minimal knowledge about the case so he can make informed decisions regarding the litigation." *Dotson v. Portfolio Recovery Assocs, LLC*, No. 08-3744, 2009 WL 1559813, at *5 (E.D. Pa. June 3, 2009). Plaintiff establishes that she has this requisite knowledge. Plaintiff notes that in her deposition she demonstrated an understanding of the key components of her claims – that VCUSA represented that the T8 would have 25 miles of pure electric range and that the T8 did not perform as advertised. Plaintiff also submitted a declaration alongside her reply brief, affirming that she understands her role as putative class representative. Pl. Reply, Ex. 7.

Defendant argues that this declaration directly contradicts Plaintiff's deposition testimony, which undermines her credibility and renders her inadequate. Def. Sur-Reply at 13-14. Defendant, however, does not point to any actual contradictions between the deposition testimony and the declaration. In addition, Defendant cites to *Coyle v. Hornell Brewing Co.*, No. 08-2797, 2011 WL 2147218 (D.N.J. May 26, 2011) for the proposition that Plaintiff's credibility is a reason to find her inadequate. *Coyle* considered whether a lead plaintiff's contradictory testimony as to the merits of a claim could disqualify a proposed class representative. *Id.* at *3-4. The *Coyle* court noted that "[t]he issue is not simply whether Plaintiff in fact lied, but whether her inconsistent testimony makes her vulnerable to a unique defense not faced by other class members, thereby rendering her interests potentially antagonistic to the interests of the other class members." *Id.* at *4. Defendant has not shown that Plaintiff lied or how her statements subject her to a unique

20

defense.  Consequently, *Coyle* does not help Defendant's argument.

Defendant does observe that Khadija essentially became involved in this litigation by accident. Her husband, Xavier, was the primary impetus behind purchasing the vehicle and initiating this litigation.  Only later was it revealed that Xavier lacked standing, and Khadija was substituted in as the named Plaintiff.  But this does not mean that Khadija is now an inadequate class representative.  Plaintiff sufficiently demonstrates that she has the requisite knowledge of the case and does not have any interests potentially antagonistic to other members of the class. Consequently, she satisfies her burden of demonstrating adequacy.

In sum, Plaintiff satisfies each of the four Rule 23(a) requirements.

**B. Rule 23(b) Requirements**

As discussed, Plaintiff seeks to certify two classes pursuant to Rule 23(b)(3).  The requirements for Rule 23(b)(3) class certification are that "the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy."  *Dukes*, 564 U.S. at 362 (emphases added) (citing Fed. R. Civ. P. 23(b)(3)).  These are commonly referred to as the "predominance" and "superiority" requirements.  *Id.*  The Third Circuit has also recognized that "[a] plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable."  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), *as amended* (Apr. 28, 2015).

In conducting a predominance and superiority inquiry, the following factors are relevant:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

F.R.Cv.P. 23(b)(3)(A)-(D).

### 1. Predominance

The predominance requirement is "a 'far more demanding' standard than the commonality requirement of Rule 23(a)." *Gonzalez v. Corning*, 885 F.3d 186, 195 (3d Cir. 2018) (quoting *Amchem Prods.*, 521 U.S. at 624). It "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). "Predominance turns on the 'nature of the evidence' and whether 'proof of the essential elements of the cause of action requires individual treatment.'" *Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 319 (3d Cir. 2016) (quoting *Hydrogen Peroxide*, 552 F.3d at 311).

"At the class certification stage, the predominance requirement is met only if the district court is convinced that 'the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quoting *Gonzalez*, 885 F.3d at 195). To assess this requirement, district courts "*must look first to the elements of the plaintiffs' underlying claims* and then, 'through the prism' of Rule 23, undertake a 'rigorous assessment of the available evidence and the method or methods by which [the] plaintiffs propose to use the evidence to prove' those elements." *Id.* at 128 (emphasis added) (quoting *Marcus*, 687 F.3d at 600).

As discussed, Plaintiff seeks to certify two multi-state classes that are both premised on

various state laws. "[V]ariations in the rights and remedies available to injured class members under the various laws of the fifty states [does] not defeat commonality and predominance." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 301 (3d Cir. 2011). When a court is presented with a nationwide class, however, the different state laws must fall "into a limited number of predictable patterns." *Id.* To determine if that is the case, a court must examine the elements of the underlying causes of action. *Neale*, 794 F.3d at 370. Ultimately, it is the "*plaintiff's burden to 'credibly demonstrate, through an extensive analysis of state law variances*, that class certification does not present insuperable obstacles.'" *Gray v. Bayer Corp.*, No. 08-4716, 2011 WL 2975768, at *7 (D.N.J. July 21, 2011) (emphasis added) (quoting *Amchem Prods.*, 521 U.S. at 623). Plaintiff fails to do so here.

### a.  Multistate Class

The Multistate Class is premised on the consumer fraud/protection acts of nine states. While Plaintiff concedes that there will be issues that are not susceptible to class-wide proof as a result of the different state laws involved, she contends that "the common elements of a deceptive act, causation, and damages" predominate. Pl. Brf. at 30. Plaintiff provides charts that purportedly outline the elements for each state's consumer fraud statutes and the available damages. Pl. Reply, Ex. 1, 2, 5. But rather than show similarities, Plaintiff's charts demonstrate fundamental differences among the nine states. For example, Illinois is the only state that requires a plaintiff to establish a defendant's intent for a plaintiff to rely on the advertisement; California and Massachusetts both require a plaintiff to prove foreseeability; and New Jersey and Massachusetts permit an award of consequential damages while California only provides for restitution. *Id.*, Ex. 2, 5. Moreover, Plaintiff's charts do not address other key issues, such as whether a plaintiff must directly view the alleged violative advertisement, which as discussed, is an issue in this matter.

23

*Compare De Bouse*, 922 N.E.2d at 316 (explaining that under the Illinois Consumer Fraud Act, it may be sufficient if the plaintiff viewed the communication or advertising indirectly), *with Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 93 (D.N.J. 2011) (stating that under the New Jersey Consumer Fraud Act, "[t]he plaintiff has to plead that the misrepresentation was made to him or her individually").  These are fundamental differences, and Plaintiff fails to carry her burden of demonstrating how the Court could group these varying laws to ensure a jury is confronted with a limited number of predicable patterns.

Plaintiff further contends that "if a nationwide class proves unmanageable . . . the Court could still divide the Multistate Class into sub-classes at trial," Pl. Brf. at 30, or create issue classes, Pl. Reply at 18.  But again, Plaintiff provides no suggestion as to how the claims should be divided.  In addition, even if Plaintiff did propose sub-classes or issue classes, the Court has serious doubts as to whether Plaintiff can assert claims on behalf of a class in a jurisdiction that Plaintiff has not suffered an injury.  *Semeran*, 2016 WL 3647966, at *6.

Because Plaintiff fails to establish that the claim in the Multistate Class can be resolved through common proof due to the different state laws, Plaintiff does not meet her burden of establishing predominance for the putative Multistate Class.

### b.  National Class

Plaintiff's claims in the National Class suffer from the same shortcomings.  As discussed, the National Class involves state law claims for fraud and unjust enrichment and seeks to certify a class that includes all fifty states.  Plaintiff contends that although each state applies its own common law fraud and unjust enrichment elements, there is significant overlap among the states.  Plaintiff again points to charts highlighting the similarities and differences of the elements of common law fraud and unjust enrichment in all fifty states.  Pl. Reply, Exs. 3-4.  For common law

fraud, all states require a false fact, and more than half of the states require that a plaintiff relied on the defendant's misrepresentation. But some states require that the defendant intended to induce reliance on the false fact, and some states require that a plaintiff's reliance be justifiable. Other states require that the plaintiff be ignorant of the falsity of the fact. Pl. Reply, Ex. 3. A review of this chart reveals no discernable pattern or grouping of the states. Moreover, not every state has adopted a reasonable person or objective standard of materiality, as another chart demonstrates. Pl. Reply, Ex. 1. For the six states that employ a subjective standard of materiality, Plaintiff has not provided any explanation for how these claims may be tried as a class.

The unjust enrichment claim suffers from similar problems. Plaintiff's chart contains ten distinct elements, with no discernible overlap or commonality among the fifty states.[13] Pl. Reply, Ex. 4. It appears that a majority of states require a plaintiff to establish that she conferred a benefit that the defendant unjustly retained, some states require that a defendant be aware of the benefit, three require the plaintiff to have expected payment, and four do not even provide for a remedy. *Id.*

Plaintiff contends that, despite these differences, the common issue of the defendant's conduct would predominate in adjudicating the claims. But again, Plaintiff does not attempt to set forth a plan that makes a nationwide fraud or unjust enrichment claim manageable. It is Plaintiff's burden to do so, and Plaintiff fails to meet this burden. Consequently, Plaintiff does not establish that common issue predominate with respect to the National Class.

---

[13] In her reply brief, Plaintiff argues that the Court should apply New Jersey law to the unjust enrichment claim because there are no actual conflicts among various states' unjust enrichment laws. Pl. Reply at 17. The case Plaintiff cites in support, however, addressed conflicts in the context of a choice-of-law analysis, not in terms of how the case would be presented at trial. *See Agostino v. Quest Diagnostics Inc.*, 256 F.R.D. 437, 464 (D.N.J. 2009). Neither party has raised the choice-of-law issue in this matter.

In sum, the Court cannot certify either of Plaintiff's proposed classes because Plaintiff fails to establish predominance.

### 2.  Superiority and Ascertainability

Because Plaintiff does not meet her burden as to predominance, the Court need not address superiority or ascertainability.  As discussed, Defendant's motion to strike a declaration from Mr. Charles Lawson, a putative expert in class notice and administration, is also presently before the Court.  D.E. 141.  In his declaration, Lawson explains how members of the Multistate and National Classes could be identified and details the methodology he would employ to do so.  D.E. 128-20. Lawson's declaration, therefore, pertains to ascertainability.  Because the Court is not reaching the party's arguments as to ascertainability, it did not consider Lawson's declaration.  Consequently, Defendant's motion to strike is denied without prejudice, and Defendant can refile the motion at a later date if necessary.

### C.  CONCLUSION

For the reasons stated above, and for good cause shown, Plaintiff's motion for class certification, D.E. 128, and Defendant's motion to strike Lawson's certification, D.E. 141, are **DENIED** without prejudice.  Defendant's motion for leave to file a sur-reply, D.E. 155, is **GRANTED**.  An appropriate Order accompanies this Opinion.

Dated:  December 8, 2020

John Michael Vazquez, U.S.D.J.

26