## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| XAVIER LAURENS and KHADIJA LAURENS, individually and on behalf of all others similarly situated, | Civil Action No. 2:18-cv-08798-JXN-CLW |
| Plaintiffs, | |
| -against- | Hon. Julien Xavier Neals |
| VOLVO CAR USA, LLC, a Delaware limited liability corporation, | Hon. Cathy L. Waldor |
| Defendants. | |

## DEFENDANT VOLVO CAR USA, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

By:   Oliver K. Beiersdorf

**Reed Smith LLP**
506 Carnegie Center, Suite 300
Princeton, NJ 08540
(609) 987-0050
Email: obeiersdorf@reedsmith.com

Robert A. Roth
Karlin E. Sangdahl
**REED SMITH LLP**
10 S. Wacker Drive, 40th Floor
Chicago, IL 60606
Tel: 312.207.1000
Email: rroth@reedsmith.com

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND ................................................................................4

CHOICE OF LAW ...............................................................................................4

LEGAL STANDARD ...........................................................................................6

ARGUMENT ........................................................................................................7

I.      Plaintiff Cannot Substantiate Numerous Elements Of Her ICFA Claim. ...........7

      A.      Plaintiff Has No Evidence that VCUSA Made Any False or Misleading Statement about the T8's Pure Electric Range. .......................7

            1.      None of the Representations that Form the Basis of Plaintiff's Claim Contained False or Misleading Information About the T8's Capabilities. .........................................9

            2.      None of the Representations Purported to Provide Information about what the T8's Monroney Sticker EPA Range Would Be. ..............................................................21

      B.      VCUSA's Representations Did Not Proximately Cause Plaintiff's Alleged Injury. ..........................................................................23

      C.      Plaintiff Has Not Suffered Damages, and Has Not Presented a Methodology for Computing Damages Sufficient to Survive Summary Judgment. ..........................................................................27

            1.      Plaintiff Has Not Suffered "Benefit of the Bargain" Damages. ........................................................................28

            2.      Plaintiff's Only Purported Damages Calculation Is Demonstrably False. ..................................................30

            3.      Plaintiff Cannot Prove The Elements Necessary To Recover Punitive Damages. ..............................................33

II.     Plaintiff's Common Law Fraud Claim Exhibits the Same, And
        Additional, Flaws. ...................................................................................34

III.    Plaintiff's Express Warranty Claim Similarly Lacks Factual Proof. ....................37

IV.     Summary Judgment is Proper on Plaintiff's Duplicative Unjust
        Enrichment Claim. .....................................................................................39

CONCLUSION .....................................................................................................40

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Prac. Litig.*,
  393 F. Supp. 3d 745 (N.D. Ill. 2019) ...................................................... 24, 25

*Ace Hardware Corp. v. Marn, Inc.*,
  No. 06-cv-5335, 2008 WL 4286975 (N.D. Ill. Sept. 16, 2008) ..................... 28, 33, 39

*Alleman v. Collection Prof'ls, Inc.*,
  Case No. 1:17-cv-9294, 2019 WL 5576872 (N.D. Ill. Oct. 29, 2019) ........................ 8

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ....................................................................................... 6, 7

*Avery v. State Farm Mut. Auto Ins. Co.*,
  216 Ill.2d 100 (2005) ........................................................................................ 24

*Barbara's Sales, Inc. v. Intel Corp.*,
  227 Ill.2d 45 (2007) .......................................................................................... 24

*Bober v. Glaxo Wellcome Plc*,
  246 F.3d 934 (7th Cir. 2001) ......................................................................... 8, 18

*Brown v. Abbott Labs, Inc.*,
  No. 10 C 6674, 2011 WL 4496154 (N.D. Ill. Sept. 27, 2011) ........................... 30

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ............................................................................................ 6

*Clark v. Experian Info Sols., Inc.*,
  No. 03 C 7882, 2006 WL 2224049 (N.D. Ill. Aug. 2, 2006) ............................ 30

*Cleary v. Philip Morris, Inc.*,
  656 F.3d 511 (7th Cir. 2011) ............................................................................ 40

*Collins Co. v. Carboline Co.*,
  532 N.E.2d 834 (Ill. 1988) ................................................................................ 38

*Connick v. Suzuki Motor Co.*,
  174 Ill.2d 482 (1996) ........................................................................................ 24

*Davis v. G.N. Mortg. Corp.*,
    396 F.3d 869 (7th Cir. 2005) ...................................................................*passim*

*De Bouse v. Bayer*,
    235 Ill.2d 544 (2009) ......................................................................................25

*Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*,
    340 F. Supp. 3d 706 (N.D. Ill. 2018) ...................................................8, 9, 19

*Dunkin' Donuts Inc. v. N.A.S.T., Inc.*,
    428 F. Supp. 2d 761 (N.D. Ill. 2005) ...................................................... 28, 33

*Dzielak v. Whirlpool Corp.*,
    Civ No. 2:12-89 (KM)(JBC), 2017 WL 6513347 (D.N.J. Dec. 20,
    2017) .................................................................................................... 9, 39

*Elipas Enters., Inc. v. Silverstein*,
    243 Ill. App. 3d 230 (1993) ...........................................................................37

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ..........................................................................................5

*Fredrick v. Simmons Airlines, Inc.*,
    144 F.3d 500 (7th Cir. 1998) ...........................................................................5

*Frerck v. John Wiley & Sons, Inc.*,
    Case No. 11-cv-2727, 2014 WL 3512991 (N.D. Ill. July 14, 2014) ................... 35, 36

*Hasek v. DaimlerChrysler Corp.*,
    745 N.E.2d 627 (Ill. App. Ct. 2001) ..............................................................38

*Haslund v. Simon Prop. Group, Inc.*,
    378 F.3d 653 (7th Cir. 2004) ..........................................................................28

*Ibarrola v. Kind, LLC*,
    83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................................*passim*

*Jasper v. Abbott Labs, Inc.*,
    834 F. Supp. 2d 766 (N.D. Ill. 2011) ............................................................40

*Killeen v. McDonald's Corp.*,
    317 F. Supp. 3d 1012 (N.D. Ill. 2018) ..............................................8, 20, 21

*Kremers v. Coca-Cola Co.*,
 712 F. Supp. 2d 759 (S.D. Ill. 2010) ........................................................ 25, 40

*Kury v. Abbott Labs, Inc.*,
 No. 11-803 (FLW), 2012 WL 124026 (D.N.J. Jan. 17, 2012) ...................................30

*MacNeil Auto Prods., Ltd. v. Cannon Auto. Ltd.*,
 715 F. Supp. 2d 786 (N.D. Ill. 2010) ...........................................................38

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) .............................................................................6

*Miles v. Am. Honda Motor Co.*,
 No. 17 C 4423, 2017 WL 4742193 (N.D. Ill. Oct. 19, 2017)...................................6

*Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors America, Inc.*,
 372 Ill. App. 3d 354 (2007) ....................................................................38

*Oliveira v. Amoco Oil Co.*,
 201 Ill.2d 134 (2002) ..........................................................................27

*Petty v. Chrysler Corp.*,
 343 Ill. App. 3d 815 (2003) ................................................................ 28, 39

*In re Rust-Oleum Restore Mktg., Sales Practices and Prods. Litig.*,
 155 F. Supp. 3d 772 (N.D. Ill. 2016) ...........................................................5

*Shannon v. Boise Cascade Corp.*,
 208 Ill.2d 517 (2004) ...................................................................... 24, 26

*Siegel v. Shell Oil Co.*,
 612 F.3d 932 (7th Cir. 2010) ..........................................................1, 33, 40

*Smith v. Prime Cable of Chicago*,
 276 Ill. App. 3d 843 (1995) ....................................................................34

*Trujillo v. Apple Comput., Inc.*,
 581 F. Supp. 2d 935 (N.D. Ill. 2008) ....................................................... 9, 19

*Wiegel v. Stork Craft Mfg., Inc.*,
 946 F. Supp. 2d 804 (N.D. Ill. 2013) .................................................... 8, 17, 40

*Zekman v. Direct American Marketers, Inc*,
 182 Ill.2d 359 (1998) ..........................................................................25

*Zelinski v. Columbia 300, Inc.*,
    335 F.3d 633 (7th Cir. 2003) ............................................................................34

**Statutes**

28 U.S.C. § 1404(a) ..............................................................................................5

**Rules**

Fed. R. Civ. P. 56(c) .............................................................................................6

**INTRODUCTION**

Plaintiff's meritless lawsuit is premised on a single false allegation—she asserts that Defendant VCUSA promised her that her vehicle, a 2016 Volvo XC90 T8 ("T8"), is capable of driving 25 miles using only electric power when it is not.  Now, after four-plus years of litigation, this case has reached what some courts have bluntly described as the "put up or shut up moment in a lawsuit."[1]  No longer can Plaintiff raise ever-shifting, unsupported legal and factual theories to keep her case alive.  Nor can her case continue to survive with mere allegations and argumentative mischaracterizations as a substitute for evidence.[2]  Plaintiff must now produce evidentiary proof sufficient to establish a genuine issue of material fact on each element of her claims.  She cannot do so.  Plaintiff has narrowly focused on her unsuccessful class certification throughout discovery.  In doing so, she completely failed to carry her evidentiary burden as to her own claims.

All four counts of Plaintiff's First Amended Complaint ("FAC") are fatally flawed.  Plaintiff's consumer fraud, common-law fraud, express warranty, and unjust enrichment claims are based on the same underlying allegations.  Plaintiff purchased a

_____

[1] *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010).

[2] Plaintiff has proceeded throughout this case with a clear focus on trying to certify a class.  Plaintiff's most recent class certification motion remains pending.  Her first motion for class certification was denied on December 8, 2020.  *See* ECF 163.

- 1 -

2016 Volvo XC90 T8 vehicle ("T8"), a seven-seat hybrid Sport Utility Vehicle from a dealer in Illinois, and claims that after her purchase, she discovered that the T8 was not actually able to achieve the maximum range her husband previously told her she would achieve when driving in pure electric mode.[3]  The T8 was brand new to the United States when Plaintiff purchased it.  But prior to her purchase, Plaintiff's husband read certain publications concerning the T8's pure electric performance.   Specifically, Plaintiff's husband read materials reporting, among other things, that the T8 achieved a pure electric range of 40 kilometers under mandatory European testing, or was predicted to achieve an estimated 17-mile range under United States Environmental Protection Agency ("E.P.A.") criteria.

Discovery, both fact and expert, is long closed.  Although the central allegation of all four of her claims is that VCUSA made material representations about the pure electric range of her T8, Plaintiff has yet to come forward with any evidence that her T8, or any T8, is unable to achieve the published pure electric ranges.  To the contrary, discovery—including undisputed testing performed on Plaintiff's own vehicle—has shown that VCUSA's representations were true and factually supported.

Plaintiff's inability to prove an actionable misrepresentation is not the only

---

[3] As explained at pp 4-5 below, Plaintiff transferred this case from the Northern District of Illinois.  This transferee court is obligated to apply the law the transferor court would have applied had the case remained there, in this case, Illinois law.

evidentiary deficiency necessitating summary judgment in this case.  Each of her claims require a showing of proximate causation—that is, that VCUSA's conduct caused her to suffer a loss.  Plaintiff cannot make that showing because she readily conceded during her deposition that she never read or saw a single representation about the T8's pure electric range, including any of those attached to her FAC or produced in discovery. Plaintiff testified that she merely relied on what her husband, Xavier, told her.  But as revealed in the couple's deposition testimony, Plaintiff's husband (1) omitted important information included in the publications he reviewed from his comments to Plaintiff about the T8's electric capabilities; and (2) failed to provide her with key information he learned from his research before she finalized her vehicle purchase in early 2016. Illinois law is clear that a plaintiff cannot establish proximate cause unless she can show that she was actually deceived by a defendant's representations.  Under the undisputed facts of this case, it is impossible for Plaintiff to satisfy this critical element.

Plaintiff has also failed to adduce evidence of damages and a supportable method of computing alleged damages.  The only testing performed on Plaintiff's vehicle reveals that it achieved the pure electric range reported, defeating the  allegations in the FAC. And Plaintiff's damages theory concocted for class certification is premised on assumptions and demonstrable falsehoods, not on *actual evidence*.  At this advanced stage, Plaintiff's inability to satisfy her evidentiary burden is fatal.

In addition to these flaws, which universally apply to all her claims, Plaintiff also

cannot satisfy her burden as to a number of issues specific to particular claims.  With respect to her common law fraud claim, Plaintiff cannot demonstrate scienter or justifiable reliance.  Nor can Plaintiff show any breach, much less an uncured breach, of express warranty.  And Illinois law is clear that unjust enrichment is unavailable when, as here, (1) an adequate remedy at law exists, or (2)  it is premised on the same allegations as failed fraud claims.

For these reasons, and those detailed in full below, this Court should grant summary judgment, and bring Plaintiff's baseless claims to an end.

## FACTUAL BACKGROUND

VCUSA incorporates by reference its Rule 56.1 Statement of Undisputed Facts as though set forth fully herein.

## CHOICE OF LAW

Based on the class certification submissions[4] and the Court's prior ruling (ECF 104), it does not appear that there is a dispute between the parties that Illinois law governs Plaintiff's individual claims.  Plaintiff originally filed this case in the Northern District of Illinois, invoking the Illinois Consumer Fraud Act ("ICFA").  *See* ECF 22. When VCUSA moved to strike her class allegations on personal jurisdiction grounds,

---

[4] In her most recent class certification briefing, Plaintiff, as a fallback position, is attempting to certify classes under Illinois law only based on the law governing her own claims.  *See* ECF 168-1, at p. 2.

in lieu of filing a response, Plaintiff opted to move to transfer the case to the District of New Jersey pursuant to 28 U.S.C. § 1404(a).  *See* ECF 83.  Transfer for convenience, rather than for improper venue, has choice of law implications, as the transferee court is obligated to apply the law the transferor court would have applied had the case remained there.  *See Ferens v. John Deere Co.*, 494 U.S. 516, 523-26 (1990) (extending holding of *Van Dusen v. Barrack* to plaintiff-initiated transfers of venue).

In tort claims like consumer fraud, common law fraud, and unjust enrichment, Illinois courts apply the law of the state with the most significant relationship to the claims.  *Fredrick v. Simmons Airlines, Inc.*, 144 F.3d 500, 503-04 (7th Cir. 1998).  The state with the "most significant relationship" depends on a number of factors, including (1) the place of injury; (2) the place where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) the place where the relationship between the parties is centered.  *Id.* at 504.  As this Court has already determined in rejecting Plaintiff's attempt to invoke the New Jersey Consumer Fraud Act in this case, these factors overwhelmingly favor applying Illinois law.  *See* ECF 104.  Illinois is Plaintiff's place of residence, the place where her alleged injury occurred, and the only place where the parties' relationship could be said to be centered, given the fact that Plaintiff did not purchase her vehicle directly from VCUSA.  Illinois law likewise governs Plaintiff's warranty count.  As numerous Illinois courts have recognized, the place of purchase and place of injury governs breach of warranty claims.  *See In re Rust-Oleum Restore Mktg.,*

- 5 -

*Sales Practices and Prods. Litig.*, 155 F. Supp. 3d 772, 786 (N.D. Ill. 2016); *Miles v. Am. Honda Motor Co.,* No. 17 C 4423, 2017 WL 4742193, at *3 (N.D. Ill. Oct. 19, 2017). Both factors dictate that Illinois law applies.

## LEGAL STANDARD

Summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To avoid summary judgment, the nonmoving party cannot rest on pleadings and allegations, but must "set forth specific facts," supported by evidence, "showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Such a genuine issue exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. A genuine issue does not exist where the record shows "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Indeed, a principal purpose of summary judgment motions is to isolate and dispose of factually unsupported claims. If, in response to a motion under Rule 56, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment should be granted. *Id.* at 322. To survive summary judgment, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S.

574, 586 (1986).  Likewise, the "mere existence of a scintilla of evidence" to support the non-movant's claims is not enough—rather, the *actual evidence* must be sufficient to support a reasonable finding in its favor. *Anderson*, 477 U.S. at 252.

## ARGUMENT

## I.   Plaintiff Cannot Substantiate Numerous Elements Of Her ICFA Claim.

A successful ICFA claim requires a plaintiff to prove "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (citation omitted).  Plaintiff lacks evidence to make at least three of these required showings, dooming her claim.

### A.   Plaintiff Has No Evidence that VCUSA Made Any False or Misleading Statement about the T8's Pure Electric Range.

At the heart of Plaintiff's ICFA claim—and indeed, all four of her claims—is her contention that VCUSA misrepresented the distance her T8 would be able to travel when operating solely on electric power.  In her FAC, Plaintiff alleges VCUSA misrepresented that her T8 would achieve a range of 25 miles using solely electric power from the T8's battery, while knowing that the "real" range was less. *See* ECF 22, ¶ 55. As support, Plaintiff selectively quotes portions of press releases and other publications, alleging "VCUSA stated that the range for driving on pure electric power 'will be around

40 kilometres.' A range of 40 kilometres translates to a range of 24.85 miles." See ECF 22, ¶ 15. But, upon inspection, neither VCUSA's press releases nor the third party publications produced in discovery make the guarantee that Plaintiff implies. To the contrary: the evidence reveals that the representations actually contained in the publications at issue are, in fact, true.

At summary judgment, evidence, not unsupported allegations, are what matters. And the evidence makes plain that Plaintiff cannot satisfy her burden to prove that VCUSA engaged in deceptive conduct. Courts apply a "reasonable consumer" standard in evaluating the likelihood of deception under the ICFA. *Alleman v. Collection Prof'ls, Inc.*, Case No. 1:17-cv-9294, 2019 WL 5576872, at *6 (N.D. Ill. Oct. 29, 2019). And critically, "when determining whether a statement is deceptive or misleading . . . a court considers the statement in context, viewing the product as a whole" and evaluating all of the information available to the consumer. *Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, 340 F. Supp. 3d 706, 719 (N.D. Ill. 2018); *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 938-39 (7th Cir. 2001); *Davis*, 396 F.3d at 884. Courts applying Illinois law have repeatedly awarded summary judgment—or dismissed claims at the pleading stage— when the challenged statements and representations could not be false or misleading under this carefully crafted standard. *See, e.g., Bober*, 246 F.3d at 938-940; *Davis*, 396 F.3d at 884; *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013-14 (N.D. Ill. 2018); *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756-59 (N.D. Ill. 2015); *Wiegel v. Stork Craft*

*Mfg., Inc.*, 946 F. Supp. 2d 804, 810-17 (N.D. Ill. 2013); *Trujillo v. Apple Comput., Inc.*, 581 F. Supp. 2d 935, 938-39 (N.D. Ill. 2008); *Deckers Outdoor Corp.,* 340 F. Supp. 3d at 719.

> **1.    None of the Representations that Form the Basis of Plaintiff's Claim Contained False or Misleading Information About the T8's Capabilities.**

Because Illinois law requires that representations be evaluated viewing (1) the product as a whole and (2) the totality of information available to a consumer; it is critical to examine what representations VCUSA actually made.   It is particularly important to do so given that this case centers on representations about fuel economy. As one New Jersey federal court aptly observed:

> Drivers may drive fast, brake quickly, or frequently idle in traffic; all of these factors will affect the actual mpg of a car.  Therefore, the car manufacturer cannot be held to the representation that an "eco-friendly" car with "50 mpg efficiency" will achieve *exactly* 50 mpg for each driver. Still, standardized efficiency tests are useful in comparing models, even if an individual's results will vary.  Irrespective of individual driving habits, a car manufacturer might be guilty of a misrepresentation if it said the car achieved 50 mpg on *efficiency tests* while knowing that it would achieve only 25 mpg on *efficiency tests*."

*Dzielak v. Whirlpool Corp.,* Civ No. 2:12-89 (KM)(JBC), 2017 WL 6513347, at *10 (D.N.J. Dec. 20, 2017).   This context is crucial, as the inherent variability in fuel economy experience is common knowledge[5], expressly recognized and emphasized by the EPA,

---

[5] Plaintiff's husband was well aware of the many factors that impact a vehicle's electric range, including temperature, driving style/speed, and road type.  SOF ¶ 150.  He did not share this knowledge with Plaintiff when he told her of his understanding of the T8's pure electric range to his wife. *Id.* ¶ 151.

and made clear to vehicle purchasers by virtue of mandatory disclosures required by law to appear on new vehicles at the point of sale which state **"Actual results will vary for many reasons, including driving conditions and how long you drive and maintain your vehicle."**   SOF ¶¶ 47-49, 72.   The T8's manual contains similar statements.  SOF ¶ 156.

### i. The Challenged Representations, the Monroney Stickers, and Fuel Economy Testing Background.

The 2016 XC90 T8 vehicle was first introduced and sold in Europe beginning in 2015.  SOF ¶¶ 64, 73.  Plaintiff pre-ordered her T8  in February 2015, and completed her purchase and took delivery of her T8 on January 9, 2016.  SOF ¶¶ 66, 125-26.  When Plaintiff pre-ordered her T8, the T8s were available for sale exclusively in Europe, and the only testing which had been performed were the certified independent test results under the applicable European test specification, called the New European Driving Cycle, or "NEDC." *Id.*, ¶ 74.  Prior to and after its release in the US, a number of press releases pertaining to the T8 vehicle were made available on the "Media/Press" portion of VCUSA's website. *Id.,* ¶ 79.  Press releases for international vehicles are often issued before country-specific information is available, and European vehicle manufacturers often share "glimpses" of their vehicles from their home countries to give readers a general idea of the vehicle. *Id.*, ¶ 83.

Plaintiff attached a host of press releases to her FAC, which she contends contain misrepresentations about the T8's pure electric range.  During discovery, Plaintiff also

produced a number of third party publications that contain information about the T8's electric range that she similarly claims are false or misleading.  It is undisputed, as set forth in detail below, that Plaintiff did not read or view any of these representations.  *Id.*, ¶¶ 130-31.  Rather, it was Plaintiff's husband who claimed he viewed them, considered them, and ultimately made the decision that Plaintiff should purchase the T8.  *Id.* ¶¶ 133-46.  Nevertheless, given Plaintiff's husband's testimony about what he reviewed and relied upon before taking the T8 home (SOF ¶¶ 133-145), it is clear that all of the following materials were available when Plaintiff finalized her vehicle purchase:

- An October 21, 2014 press release attached as Exhibit 1 to the FAC, issued in advance of the European launch of the T8, stated that "[n]ormal driving is conducted in the default hybrid mode.  But at the push of a button the driver can switch to quiet and emission-free city driving on pure electric power where the range will be around 40 kilometers."  SOF ¶ 86.  The same press release disclosed that the statements "relate to Volvo Car Group's international car range" and that "[v]ehicle specifications may vary from one country to another and may be altered without prior notification."  *Id.*, ¶ 87.

- A December 8, 2014 press release attached as Exhibit 2 to the FAC stated that in pure electric mode, the T8 "has a range of more than 40km using just electricity" and contains the same disclosures about the international car range and potential variance in country specifications.  *Id.,* ¶¶ 89, 91.  It also states that the "***data used in the press release is based on the NEDC certification cycle used in the EU. The figures are preliminary.***"  *Id.*, ¶ 90 (emphasis added).

- Exhibit 3 to the FAC, an April 15, 2015 press release, states that "***Preliminary testing based on EPA criteria produced an estimated range of 17 miles using just electricity...***"  *Id.*, ¶ 94 (emphasis added).

- Exhibit 5 to the FAC is an April 30, 2015 press release that states the "XC90 T8 has a range of more than 40km using just electricity" and notes that "[a]ll figures are

based on the NEDC driving cycle for hybrids." *Id.*, ¶¶ 96-97.  It also notes that it pertains to Volvo Car Group's international car range and that specifications can vary from country to country.  *Id.*, ¶ 98.

- The brochure for the T8, which Plaintiff attached to the FAC as Exhibit 4, states that "***Fully charged, the T8 Twin Engine provides 17 miles (estimated) of pure electric driving...***" Id., ¶ 103 (emphasis added).

In addition to the press releases, Plaintiff produced a number of third-party internet publications in discovery, primarily independent vehicle reviews that contained information about the T8 and its pure electric performance.  While Plaintiff has never adduced any evidence tying the statements made in the third-party publications to VCUSA, it is undisputed that they were available for Plaintiff to review and consider, as her husband did.  These materials contain many of the same statements and qualifiers found in the press releases, which are instrumental to understanding both (1) what VCUSA actually represented to consumers; and (2) the totality of information available to T8 purchasers:

- A February 15, 2015 Green Car Reports article stated that "Volvo quotes a range of 40 km (25 miles), but that's on the European NEDC cycle.  We estimate that the comparable EPA number is likely to be between 18 and 21 miles."  SOF ¶ 107.

- On May 21, 2015, the same outlet published another article stating that "The XC90 T8 has a 9.2-kilowatt-hour lithium-ion battery pack, which provides enough capacity for 25 miles of electric range, Volvo claims. (The EPA rated range may be lower.)" *Id.*, ¶ 108.

- The Car Magazine UK article cited in Paragraph 27 of the FAC references the "European test" when discussing the T8's pure electric range.  *Id.*, ¶ 109.

- An April 16, 2015 review published on Edmunds.com stated that the "***Volvo plug-in hybrid has an estimated electric range of 17 miles.  The EPA has not***

- 12 -

*released official fuel economy numbers on the XC90 T8 Twin Engine.*" *Id.*, ¶ 110 (emphasis added).

- The Inside EV article referenced in Paragraph 28 of the FAC says that the T8's battery is "large enough to offer up to 40km (25 miles) in the pure electric mode under NEDC conditions (expect less in the real world)." *Id.*, ¶ 112.

- An Autoweek review published on April 20, 2015 likewise stated that the T8's lithium battery "provides the juice for an electric-only range of 17 miles, though that's not an official EPA estimate – we'll have to wait a few more weeks for the numbers that'll go on the window sticker." *Id.*, ¶ 111.

The "window sticker" referred to in the Autoweek article is also known as a Monroney sticker, and is required by federal law to be prominently displayed on the window or windshield of every new vehicle sold in the United States. SOF ¶ 48.  The sticker must contain the results of EPA-mandated testing.  *Id.*  The EPA did not announce the final results of its testing on the T8 until December 2015, when it reported a range of 0-13 miles under the EPA laboratory testing.  *Id.*, ¶ 69.  The Monroney stickers applicable to all 2016 T8s sold in the US included a range of 53 MPGe (gasoline plus electricity, for hybrid function) and 0-13 miles under the "all electric range" box. *Id.*, ¶¶ 70-71.  As noted above, the stickers also stated **"Actual results will vary for many reasons, including driving conditions and how long you drive and maintain your vehicle."** *Id.*, ¶ 72.[6]  This language is important, and reflects the fact

---

[6] The EPA's requirement that this language appear on Monroney stickers is consistent with the EPA's other guidance on fuel economy generally.  EPA literature often notes

that EPA testing does not attempt to measure a particular vehicle's pure electric *capabilities*. *Id.*, ¶ 56. Indeed, the EPA itself has acknowledged that "it is impossible to design a 'perfect' fuel economy test that will provide accurate real-world fuel economy estimates for every consumer." *Id.*, ¶ 47.[7] Variation in performance is a given.

### ii. Testing Performed on the T8 Vehicles, Including Plaintiff's T8, Shows that the Challenged Representations Were True.

None of the representations in the press releases, third party publications, or vehicle literature discussed above convey false or misleading information about the T8. Rather, the statements were true at the time they were made, and are true of Plaintiff's own vehicle. Critically, and for obvious reasons given the nature of fuel economy testing, none of the publications or materials guaranteed that Plaintiff would obtain a particular mileage using pure electric mode each time she drove her vehicle. Instead, they provided information about the T8's *capabilities* based on the "best information" available at the time. *See* SOF ¶¶ 75-77, 84.

---

that EPA estimates, including electric range, are not guarantees of electric performance, and caution that electric mileage, just like gas mileage, will vary. SOF ¶ 52.

[7] EPA testing involves a series of laboratory tests intended to simulate different conditions that can reduce fuel economy, including climbing simulations, low tire pressure, air conditioning, wind, and sudden speed and acceleration variations that some drivers may experience. *Id.*, ¶ 52; *see also id.*, ¶¶ 58-59. The EPA also adjusts its actual test results downward to estimate the impact of other conditions that occur for some drivers, like snow and ice, winds, and cargo weight. *Id.*, ¶ 46.

The T8 electric range information contained in the press releases and vehicle brochure was based on *actual, independent, certified testing performed on the T8 vehicles.* Volvo Car Corporation ("VCC"), the Swedish manufacturer of all Volvo-branded vehicles and VCUSA's parent company, provided certain required fuel economy and range information regarding the T8 to government authorities before T8s were sold in Europe. *Id.*, ¶ 60. The approved, certified independent testing authority tested the T8 vehicle. *Id.*, ¶ 61.[8] Multiple test reports from an "all electric range test" show that the T8 achieved a distance of ███████████████████████—in pure electric mode. *Id.*, ¶¶ 62-63. Plaintiff has never attempted to rebut these test results— they are undisputed. And they directly support the representations highlighted in the FAC and produced discovery, which stated that the T8, part of Volvo Car Group's international car range, could travel more than 40km on a single charge. *See* SOF ¶¶ 87, 89-91, 98. Some of the publications even specified the source of that information— the NEDC cycle. *Id.* ¶¶ 90, 97, 112.

Other press releases described in the previous section provided an estimated

───────────────

[8] Testing performed in Europe is performed using the NEDC cycle, developed to simulate car usage and driving conditions in Europe. SOF ¶ 37. Unlike the EPA tests, the NEDC testing uses a "modal cycle," which uses a compilation of straight acceleration and constant speed periods. *Id.,* ¶ 38. However like the EPA test, the NEDC testing does not attempt to determine the maximum distance a vehicle is capable of traveling on an electric charge. *Id.*, ¶¶ 39, 41.

pure electric range of 17 miles. This, too, was based on verifiable fact. Before the EPA tested the T8 and released results in December 2015, VCC performed preliminary testing based on EPA criteria. The unofficial testing, which VCC reported to VCUSA, estimated that the T8 might receive an EPA range of 17 miles. *Id.*, ¶¶ 68, 75. This information was incorporated into some of the vehicle publications, including the press release and T8 brochure attached as Exhibits 3 and 4, respectively, to the FAC. Indeed, many of the publications revealed that the information provided was, in fact, estimated or preliminary. *See id.*, ¶¶ 90, 94, 103, 107, 110, 111. Again, Plaintiff has never attempted to contradict the preliminary testing VCC performed. She never even challenged it.

The truth of VCUSA's representations about the T8's range are not just borne out by the certified NEDC testing and preliminary testing conducted by VCC. Shortly after purchasing the T8 driving it in the city of Chicago during the winter, Plaintiff's husband took it back to the dealership and complained about the pure electric performance he was experiencing. SOF ¶ 163. The dealership's service manager, Paul Walter, tested Plaintiff's T8 by driving it in pure electric mode under a variety of conditions. *Id.,* ¶ 164. In ambient temperatures between 30 and 40 degrees, according to Mr. Walter's testing, Plaintiff's T8 traveled between 18-20 miles in pure electric mode when the vehicle was preconditioned, as intended, and safety and power features (but not comfort features) were used. *Id.*, ¶ 165. Under other conditions, the T8 traveled between 9-14 miles on a charge when driving exclusively in city traffic, and 15 miles on

the highway, although Mr. Walter noted that the range would have been greater had he not encountered stop and go traffic.  *Id.*, ¶¶ 166-167.  Based on this testing, Mr. Walter concluded that Plaintiff's T8 "performed within Volvo's stated range of 17-25 miles." *Id.*, ¶ 168.  Plaintiff has not challenged the accuracy of this testing.  Plaintiff did not perform any testing to confirm or refute the maximum capabilities of her T8's pure electric performance, nor did she retain an expert to do so.

> ### iii.    None of the Challenged Representations Were False or Misleading, and They Cannot Form the Basis of an ICFA Claim.

The content of the representations Plaintiff challenges, combined with the testing performed on the T8 vehicles generally and Plaintiff's T8 specifically, conclusively show that Plaintiff lacks evidence of a deceptive practice—evidence necessary to assert an ICFA claim.  True and non-deceptive statements are not actionable as being deceptive under the ICFA.[9]  Courts applying Illinois law regularly award summary judgment or dismiss claims like Plaintiff's where, based on the totality of information available to the consumer, the statements at issue are true, and not false or misleading.  For example, in *Bober*, the Seventh Circuit affirmed a motion to dismiss

---

[9] *See Wiegel,* 946 F. Supp. 2d at 810-12 (awarding summary judgment because statements describing crib as a "drop-side crib" that "meets or exceeds all U.S. and Canadian standards" were true and could not be the subject of an ICFA claim, despite the fact that the cribs were subsequently recalled).

in favor of the defendant pharmaceutical manufacturer, including as to the plaintiff's ICFA claim.  246 F.3d at 938-39, 942-43.  Plaintiff alleged that the defendant falsely marketed Zantac 75 and Zantac 150 as not containing the same medicine.  *Id.* at 938.  The challenged statements, however, did not make such a claim.  Defendant marketed the two as different medications, which was true, as they were approved for different uses and sold in different ways.  *Id.* at 938.  But the decision ultimately turned on the court's determination that "to the extent that anyone could imply from the statements at issue that the drugs contain different medicine, information available to Zantac users, and in Bober's possession, would dispel any such implication."  *Id.*  In particular, the web pages and packaging information attached to the plaintiff's complaint stated that Zantac 75 and Zantac 150 contained the same medicine and the same active ingredient. *Id.* at 938-39.  This information, available to the plaintiff and other Zantac users, "dispels any tendency to deceive that the statements at issue might otherwise have had." *Id.* at 939.

*Bober* is not an outlier.  In *Deckers Outdoor Corp.*, the plaintiff brought ICFA and other claims based on the marketing of UGG-branded footwear.  340 F. Supp. 3d at 718.  In particular, the plaintiff claimed that it was deceptive to use the phrase "UGG Australia" in marketing when the footwear at issue was not manufactured in Australia. *Id.* at 719.  In awarding summary judgment to the defendant, the court reasoned that because the defendant labeled the inside of its boots with the country of manufacture,

and displayed country of origin labeling on footwear boxes and on its website, "no reasonable juror could conclude that Deckers deceptively marketed its boots as being made in Australia." *Id.* In *Trujillo*, disclosures about potential eventual battery replacement on product packaging were "sufficient to make it reasonably clear that some out of pocket expense to the iPhone owner" might occur, defeating the plaintiff's claim about undisclosed de facto annual maintenance and service charges. 581 F. Supp. 2d at 936-38. In *Ibarrola,* a Northern District of Illinois judge granted Kind's motion to dismiss an ICFA claim and others about Kind's marketing of certain food products as containing "no refined sugars." 83 F. Supp. 3d at 754-59. The statement "no refined sugars" could not, as a matter of law, be misleading or deceptive because the ingredients list, also available to consumers, revealed that the food products contained evaporated cane juice. *Id.* The plaintiff's asserted subjective interpretation of the labeling—that the food contained only naturally occurring sugars that had not been refined at all— was not plausible because sugar cane in its natural state cannot be digested absent some kind of refinement. *Id.* at 756-57 (examining EPA and USDA guidance and regulations describing cane sugar refinement).

Here, not only were the representations in the press releases and vehicle literature that Plaintiff included in the FAC true (as in *Wiegel*), when viewed in the context of the information available about the T8 at the time Plaintiff finalized her purchase in January 2016, they cannot be considered misleading (as in *Bober*, *Deckers*, and *Ibarrola*). Reading

the representations in their full context, including clear statements that the range

information provided was "estimated," "preliminary based on EPA criteria" or based

on the NEDC cycle, no reasonable consumer could have thought that the T8 was

guaranteed to travel, in all circumstances, 25 miles, or even 17 miles, on a single charge.

ICFA plaintiffs cannot craft claims based on incomplete snippets of information, or

baseless subjective interpretations of those snippets, turning a blind eye to their full

context and to other readily available information.

It also bears noting that the Monroney stickers for the T8 vehicles, required by

law to accompany new vehicles sold in the United States, disclosed the EPA-certified

range announced in December 2015. *Killeen* involved a similar situation, where the

plaintiff alleged McDonald's engaged in deceptive advertising when marketing "Extra

Value Meals," bundles of otherwise individually-available food items, as a "value" when

they were, in fact, less expensive to purchase individually.  317 F. Supp. 3d at 1013.

Although the court noted this had "superficial appeal," the claim could not stand

because "other information [was] available to dispel" the tendency to deceive—the

displayed prices on the menu.  *Id.*  Even though the plaintiff may not have taken the

time to do the math, the menu prices, if read, would have prevented consumers from

being deceived.  *Id.* at 1013-14.  The same is true here.  To the extent Plaintiff claims

she believed she was purchasing a T8 which would drive 25 miles on a single electric

charge (however unreasonable and baseless that belief would be), the Monroney sticker,

- 20 -

included on each T8 imported for sale in the United States, would have disabused her

of any such notion.  SOF ¶ 114.  But she didn't even ask to look at it.  *Id.*, ¶ 155.

> ### 2. None of the Representations Purported to Provide Information about what the T8's Monroney Sticker EPA Range Would Be.

VCUSA anticipates that Plaintiff may attempt to argue facts and claims she has

not pled, even though the time for amending pleadings passed more than two years ago.

ECF 124.  During class certification, Plaintiff ignored her allegations in the FAC, which

focus on the T8's pure electric range capabilities compared to VCUSA's

representations.  ECF 22 ¶¶ 35-41.  Rather, in her certification briefs, she contended

she was deceived into believing the *EPA-certified range* of the T8 would be 25 miles

because the EPA testing is the only legitimate test for determining maximum range.

(*See* ECF 168-1, at p. 24 "all class members reasonably expected that the T8 was as

advertised – that is, that the electric range VCUSA advertised was actually a legitimate,

EPA-certified range.")[10]  Based on her gross misunderstanding,[11] she began focusing

---

[10] Plaintiff's shift in her class certification brief was made in apparent recognition of the obvious individualized issues inherent in determining vehicle performance in wide ranging environments for different drivers.

[11] The EPA test is neither a maximum range test, nor the only range test. SOF ¶¶ 41-44.  Other tests exist, including NEDC testing and CAFE testing done by NHTSA.  And the EPA actually adjusts its test results downward to reduce the actual results in order to estimate the adverse impact variables like low tire pressure, rough roads, hills, snow or ice, carrying cargo, high winds and poor gasoline quality available might have. ¶¶ 46-47.  For vehicles like the T8, the EPA test recognizes it cannot measure the

solely on *EPA certification* rather than focusing on vehicle *capabilities* as alleged the FAC.

Plaintiff's new "theory" has *zero* basis in fact. Even the most cursory review of the press releases, media publications, and brochures reveals that *none* of them purported to provide readers with the final EPA-certified numbers that the EPA would eventually release for the T8. *See* SOF ¶¶ 69, 86-104, 107-13. Nor would they, considering that the EPA had not completed testing until more than a year and a half after the first press release. *Id.* Indeed, the fact that the challenged publications did not contain final EPA numbers is facially evident from their plain language.[12] Plaintiff's husband—the person who, unlike Plaintiff, actually read the materials included in the FAC and produced in discovery, understood that the electric range information provided was preliminary, estimated, and non-final. *Id.*, ¶¶ 139, 141, 142, 144.[13]

---

maximum range the vehicle is capable of traveling using solely electric power because the combustion engine will start, by design, while electric range still remains in order to add power during climbing, sudden acceleration, and starting. SOF ¶¶ 56-59.

[12] *See* SOF ¶ 90 ("data used in the press release is based on the NEDC certification cycle used in the EU. The figures are preliminary"); ¶ 94 ("Preliminary testing based on EPA criteria produced an estimated range of 17 miles using just electricity); ¶ 107 ("We estimate that the comparable EPA number is likely to be between 18 and 21 miles."); ¶ 108 ("The EPA rated range may be lower"); ¶ 110 ("The EPA has not released official fuel economy numbers on the XC90 T8 Twin Engine"); ¶ 111 ("that's not an official EPA estimate – we'll have to wait a few more weeks for the numbers that'll go on the window sticker").

[13] Customers, including Plaintiff and her husband, were also notified in December 2015 of a delay in receiving their pre-ordered T8 because of the EPA's delay in issuing its

Although it was "important" that the figures he saw in the press releases were estimated and non-final, he never asked to see a finalized mileage range. *Id.*, ¶¶ 147-148. Just as above, no reasonable consumer, based on a pre-certification review of the product and the available information in the form of press releases, third party publications, vehicle literature (much of which is attached to or referred to in the FAC) could have reasonably understood that the information VCUSA provided about the T8's range represented the final, EPA-certified range.

The information VCUSA provided to consumers in the challenged publications was true, and could not have misled a reasonable purchaser under the applicable Illinois standard, necessitating summary judgment.

## B.   VCUSA's Representations Did Not Proximately Cause Plaintiff's Alleged Injury.

Plaintiff also cannot demonstrate that any of the representations reviewed proximately caused any claimed loss. Although reliance is not, per se, a required ICFA element, the Illinois Supreme Court has repeatedly confirmed that proof of proximate causation in the ICFA context requires proof that the plaintiff was, in fact, deceived by the defendant's conduct. *See Shannon v. Boise Cascade Corp.*, 208 Ill.2d 517, 524-25 (2004); *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill.2d 45, 76 (2007). These cases have likewise

---

estimates and were given free Apple CarPlay as a customer accommodation for the inconvenience. *Id.*, ¶ 67.

consistently observed that a plaintiff who never received, read, or saw the statements she claims are false and misleading cannot be said to have been deceived by those representations, and accordingly cannot establish proximate cause.  *See Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill.2d 100, 172 (2005); *Shannon*, 208 Ill.2d at 524-26; *Connick v. Suzuki Motor Co.*, 174 Ill.2d 482, 501 (1996).

This well-established, controlling law dooms Plaintiff's ICFA claim, as she readily conceded that she did not read any of the representations attached to the FAC or produced in discovery.  SOF ¶ 130.  She did not personally read a single press release, brochure, or article discussing the T8's pure electric range before purchasing her T8.  *Id.*, ¶ 129.  She did no independent research before purchasing her T8.  *Id.*, ¶ 131.  Instead, she only received a "summary of the representations" about the T8's range, through her husband who relayed his own understanding of the representations to her.  *Id.*, ¶ 132.  These damning admissions have been fatal in other cases, and are equally fatal here.  For example, in *In re 100% Grated Parmesan Cheese Mktg. & Sales Prac. Litig.*, the plaintiffs' failure to see the allegedly false representations on the shelf-stable cheese's ingredients list about the addition of cellulose for its anticaking properties rendered their ICFA claims non-viable, justifying dismissal.  393 F. Supp. 3d 745, 756-57 (N.D. Ill. 2019).  Similarly, in *Kremers v. Coca-Cola Co.*, a court granted summary judgment on an ICFA claim where plaintiff could not dispute, based on deposition admissions, that he never saw the allegedly misleading representations about the formula of Coca-Cola

on the containers he purchased.  712 F. Supp. 2d 759, 768-70 (S.D. Ill. 2010).  *See also*

*Zekman v. Direct American Marketers, Inc*, 182 Ill.2d 359, 375-76 (1998) (plaintiff could not

have been misled by allegedly deceptive bills when "he did not read or pay the bills

himself, delegating those duties to his secretary.")

VCUSA expects, based on undeveloped assertions in class certification briefing,

that Plaintiff will argue these cases do not preclude her ICFA claim because Illinois law

allows ICFA plaintiffs to proceed on a theory of *indirect* deception.  *See* ECF 168-1, p.

33 n.11.  It is true that the Illinois Supreme Court has observed that in some situations,

deception "need not always be direct between the defendant and the plaintiff."  *De Bouse*

*v. Bayer*, 235 Ill.2d 544, 555-56 (2009).  In *Shannon*, the case analyzed in *De Bouse* as

supporting its answers to certified questions, the Court suggested that the home

purchaser plaintiffs' ICFA claims might have been able to proceed had product

literature from the defendant siding manufacturer been distributed to builders,

architects, or contractors who were in turn deceived by those representations, resulting

in the installation of defective siding.  208 Ill.2d at 525-26.  Under those facts, which

were not before the Court, "indirect deception" may have been the cause of the

plaintiffs' damages, even though they never saw the defendant's product literature.  *Id.*

Reciting the standard in fraud cases, the Court observed "it is enough that the

statements by the defendant be made with the intention that it reach the plaintiff and

influence his action and that it does reach him and that he does rely upon it, to his

- 25 -

damage." *Id.* at 526.

Relying on this indirect deception theory, Plaintiff will likely contend that she received VCUSA's mileage representations indirectly, through her husband Xavier's descriptions. But this theory has *significant* problems. Plaintiff testified that she merely relied on her husband's summary of certain statements he read. SOF ¶ 132. Based on what her husband told her, it was Plaintiff's understanding that the T8 would be able to travel 25 miles using solely electric power. *Id.*, ¶ 146. She testified that her husband only communicated that the T8's range would be 25 miles. *Id.* But Plaintiff's husband's deposition confirmed that he omitted significant context and information in the materials he reviewed when telling Plaintiff about the T8's features. Before purchasing the T8, Mr. Laurens viewed publications that stated that the information contained related to Volvo Car Group's "international car range." *Id.*, ¶ 133. He never told Plaintiff that piece of information. *Id.*, ¶ 134. Although he reviewed press releases that noted the specifications contained therein may vary from country to country, Mr. Laurens never communicated that to Plaintiff. *Id.*, ¶¶ 135-136. He also read materials (many of which are discussed above) that noted the data they contained was based on the NEDC cycle. *Id.*, ¶ 137. He also failed to communicate that information to Plaintiff. *Id.*, ¶ 138. Mr. Laurens likewise never told Plaintiff that any of the press releases or publications he read contained preliminary information, or noted that the EPA range was still forthcoming, despite having read that information in publications

he reviewed. *Id.*, ¶¶ 139-145. Ultimately, based on his research, Plaintiff's husband anticipated the T8 would have an estimated, non-final range of 17 miles. *Id.*, ¶ 142. But Plaintiff could not recall him telling her *anything* about the 17-mile figure. *Id.*, ¶ 143.

Simply put, if Plaintiff was deceived by anything, it was her husband's incomplete summaries of VCUSA's representations, rather than the representations themselves. None of the Illinois cases discussing the "indirect" deception theory have allowed a plaintiff to pursue an ICFA claim based on another person's selective and truncated characterizations or mischaracterizations of printed statements about product qualities. Based on VCUSA's research, no such cases exist. Because Plaintiff cannot establish proximate cause of any injury from VCUSA's actual statements, her ICFA claim fails.

### C.   Plaintiff Has Not Suffered Damages, and Has Not Presented a Methodology for Computing Damages Sufficient to Survive Summary Judgment.

Damages is an essential element of every claim Plaintiff brings in this case, including her cause of action under the ICFA. *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 139-40 (2002). Plaintiff's summary judgment burden on this critical component of her claims is no different or lower than the others. "As courts have held in a variety of contexts, a nonmovant's failure to produce sufficient evidence of the damages element of its claim calls for the entry of summary judgment." *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 767 (N.D. Ill. 2005). Although damages need not be proven "to an absolute certainty," the plaintiff "must present enough evidence to create a

genuine issue of fact pertaining to damages," including "a basis for computing damages with a fair degree of probability." *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 823 (2003); *Ace Hardware Corp. v. Marn, Inc.*, No. 06-cv-5335, 2008 WL 4286975, at *18 (N.D. Ill. Sept. 16, 2008). As the Seventh Circuit has observed, "[a]ssessing damages is often and permissibly speculative, but only within limits." *Ace Hardware*, 2008 WL 4286975, at *18 (quoting *Haslund v. Simon Prop. Group, Inc.*, 378 F.3d 653, 658 (7th Cir. 2004)). "[M]ere speculation, hypothesis, conjecture, or whim" will not suffice. *Petty*, 343 Ill. App. 3d at 823 (quotation omitted).

### 1. Plaintiff Has Not Suffered "Benefit of the Bargain" Damages.

During class certification briefing, Plaintiff confirmed that she intends to seek "benefit of the bargain" damages. *See* ECF 168-1, at p. 23-24. Essentially, she contends that she received a vehicle worth less than what she believed she was getting—a T8 vehicle that could travel 25 miles using solely electric power. *Id.* But for many of the same reasons that Plaintiff cannot establish that any of VCUSA's representations were false, Plaintiff cannot establish that she has suffered any damage—she received precisely what was promised. This is because:

(a) none of the challenged representations guaranteed that Plaintiff would receive any particular distance when driving her vehicle in pure electric mode;

(b) testing done by Plaintiff's dealership on Plaintiff's own T8—in January in Chicago—confirms that her T8 performed consistently with the representations which appeared in the press releases and publications;

- 28 -

(c) Plaintiff's husband reviewed and  selectively "summarized" VCUSA's statements while omitting key information, and;

(d) none of the representations promised Plaintiff that the EPA would eventually certify any specific number as the T8's Monroney-sticker figure.

Moreover, Plaintiff cannot prove that she suffered damages or a detriment because, at any time, she could have accepted VCUSA's offer of a full refund of the price she paid for her T8.  Before she became a plaintiff in this lawsuit, VCUSA sent her an unconditional offer to refund the purchase price of her vehicle and pick it up at her home if she was not satisfied with the vehicle for any reason.  *Id.*, ¶ 179.  Plaintiff has not accepted the unlimited offer.  *Id.*, ¶ 180.[14]  But Plaintiff cannot refuse to avail herself of the refund and choose to keep the T8 so that she can maintain a case against VCUSA for damages that, by any logical measure, fall far short of the amount of the offered refund.  *See, e.g., Clark v. Experian Info Sols., Inc.*, No. 03 C 7882, 2006 WL 2224049, at *34 (N.D. Ill. Aug. 2, 2006) (awarding summary judgment where the record showed plaintiff either received a refund or a refund "would have been available to her" had she requested one); *Brown v. Abbott Labs, Inc.*, No. 10 C 6674, 2011 WL 4496154, at *5 (N.D. Ill. Sept. 27, 2011) ("A plaintiff cannot decline a refund and then sue to recover

---

[14] The Seventh Circuit previously held that VCUSA's refund offer did not deprive her of Constitutional standing under Article III.  The legal implications and ramifications of the refund, however, do not end with standing.  The arguments presented here are separate and distinct.

the purchase price"); *Kury v. Abbott Labs, Inc.*, No. 11-803 (FLW), 2012 WL 124026, at *5 n.2 (D.N.J. Jan. 17, 2012).

### 2. Plaintiff's Only Purported Damages Calculation Is Demonstrably False.

Plaintiff has not satisfied her burden to prove damages to the required degree of certainty, or establish a factually sound manner of computing her damages. Plaintiff claims her T8 is somehow worth less than what she thought she was buying, but she lacks any substantiated, reliable basis upon which a trier of fact could determine the value of her vehicle as purchased, or as imagined.

Plaintiff has no damages expert to opine on a proper measure of damages, and has performed a back-of-the-envelope calculation instead. She first subtracts the MSRP of the 2016 XC90 T6[15] from the MSRP of the T8, rationalizing that approach based on the false premise that the T6 and the T8 are identical vehicles except for the T8's pure electric functionality. ECF 168-1, p. 25. She then argues that purchasers received a vehicle with a 13-mile EPA range versus a 25-mile EPA range, and accordingly overpaid by 12/25 of the difference between the price of the T6 and the T8. *Id.*

None of this is accurate, and none of it is supported by the evidence. First, the undisputed evidence adduced in this case demonstrates that there are a number of significant differences between the T6 and the T8 aside from the T8's pure electric

---

[15] The 2016 XC90 was offered in two versions, the T6 and the T8. SOF ¶ 2.

capabilities. The T8 was a first-of-its-kind seven-passenger plug-in hybrid (PHEV) version of the T6. SOF ¶ 3. It is a parallel hybrid, meaning that it has two separate drive systems: an electric motor and a gasoline engine. *Id.,* ¶¶ 5-7. The systems can be used in tandem or separately. *Id.* Accordingly, the T8 can be driven in a number of different ways: (1) in power mode (using the gasoline engine only); (2) in hybrid mode, the T8's default driving mode where the electric motor and gasoline engine work in tandem to optimize performance; or (3) in pure electric mode, where only the electric motor is used. *Id.,* ¶¶ 10-20. In contrast, The T6 version is powered solely by a single gasoline combustion engine. *Id.,* ¶ 4. The T6 cannot be driven as a hybrid, in pure electric mode, or in any electric mode. *Id.,* ¶¶ 4-10.[16]

In addition to its hybrid and pure electric capabilities, the twin engine T8 also offers greater horsepower than the T6, a higher torque rating, a faster 0-60 m.p.h. acceleration, and electronic all-wheel drive (instead of mechanical, in the T6). *Id.,* ¶¶ 21-23, 27-30. The T8, unlike the T6, is also eligible for federal and state tax credits for electric vehicles, and features a unique, handmade Orrefors crystal gear shift knob. *Id.,* ¶¶ 31, 33. Several additional luxury features came standard on the T8 that were not on

---

[16] The Monroney stickers for the T8 compared with the T6 reflect these differences. The T8 Monroney sticker features a 53 MPGe rating, for hybrid performance, in addition to the 0-13 electric rating. SOF ¶ 24. In contrast, the T6's fuel economy rating is 25 MPG, and does not have an MPGe rating. *Id.,* ¶¶ 24-26.

- 31 -

the T6.  *Id.*, ¶ 32.

Throughout this case, Plaintiff has consistently ignored these differences, and has gone to great lengths to downplay the T8's hybrid (versus pure electric) capabilities. This is curious, because Plaintiff herself testified that she understands the difference between hybrid and pure electric functionality, and made repeatedly clear that it was the T8's hybrid performance, rather than pure electric performance, that drove her to purchase the vehicle.  *Id.*, ¶¶ 127-128.  Yet according to Plaintiff's damages computation, none of these differences between the T6 and the T8, including the hybrid functionality that drove her purchasing decision, have *any value whatsoever*.  That not only defies the evidence, it defies logic.  Her failure to account for other differences between the T6 and T8 is fatal.

Moreover, Plaintiff's assumption that the T8's MSRP was based on a 25-mile EPA pure electric rating has no support in the record.  Plaintiff has not adduced any evidence regarding how the MSRP for the T8 was set, including how (and whether) the T8's actual electric mileage capability factored into the MSRP.  Plaintiff has likewise identified no evidence that the EPA certified range in pure mode had any impact on the T8's MSRP.  The T8's MSRP was set well before the EPA released any numbers for the T8.  *See* ECF 22-3 (announcing MSRP in April 16, 2015).  In fact, she has identified no evidence that the pure electric range was even considered in connection with the T8's MSRP.  Nor has she identified any expert who will testify that the EPA

- 32 -

estimated pure electric range did or would have an impact on the MSRP of the T8. Assumptions and speculation cannot carry her burden of proof. *Ace Hardware*, 2008 WL 4286975, at *18-22; *Dunkin' Donuts*, 428 F. Supp. 2d at 768-72.[17]

Summary judgment is the time to "put up or shut up." *Siegel*, 612 F.3d at 936. Plaintiff has not satisfied her evidentiary burden, and her damages are too unreliable and speculative to present to a jury.

### 3. Plaintiff Cannot Prove The Elements Necessary To Recover Punitive Damages.

Illinois law disfavors punitive damages awards. *Zelinski v. Columbia 300, Inc.*, 335 F.3d 633, 641 (7th Cir. 2003). Accordingly, such damages are recoverable only "where the alleged misconduct is outrageous either because the acts are done with malice or an evil motive or because they are performed with a reckless indifference toward the rights of others." *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 858 (1995). Mere allegations that a defendant acted knowingly or fraudulently are insufficient. *Id.* at 859.

---

[17] It also bears noting that Plaintiff has not made any effort to calculate *her own* damages in this case, and instead has only offered hypotheticals about how class member damages might be calculated should she eventually succeed in certifying a class. Plaintiff did not pay the MSRP for her T8 and has not produced evidence that anyone has ever paid the MSRP for a T8 or T6. VCUSA has no control over the ultimate prices consumers pay for their vehicles, as the ultimate prices are agreed between the retailer and the customer. SOF ¶ 117-120. Plaintiff has made no attempt to account for the discount from the MSRP she received on her T8, and has provided no basis on which the Court or a jury could determine how to factor that into her damages. This failure compounds those discussed above.

Plaintiff has no evidence that VCUSA's conduct meets this standard.  To the contrary, the uncontroverted record is that VCUSA's press releases and vehicle brochure contained true information, that VCUSA had a good faith basis for the information provided, and VCUSA's practices were consistent with how other manufacturers market their vehicles.  Plaintiff's prayer for punitive damages cannot succeed, and should not proceed to trial.

## II.   Plaintiff's Common Law Fraud Claim Exhibits the Same, And Additional, Flaws.

Plaintiff's common law fraud claim fails for many of the same reasons detailed at length above.  Common law fraud's elements bear substantial similarity to the elements of ICFA claims, but require a few additional, heightened showings.  To succeed in advancing a common law fraud claim, a plaintiff must establish (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act: (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.  *Davis*, 396 F.3d at 881-82.  As set forth above, Plaintiff has not presented evidence of a false statement of material fact, and has not satisfied her burden to establish either proximate cause or damages.  These failings are equally fatal to her fraud claim.  *Id.* at 881-84 (affirming summary judgment on ICFA and fraud claims).

Plaintiff also has no evidence to prove scienter and reliance, the two unique elements of common law fraud.  With respect to scienter, the required showing is

twofold—Plaintiff must show that VCUSA made knowingly false statements and intended to deceive her, to a clear and convincing evidence standard. *Frerck v. John Wiley & Sons, Inc.*, Case No. 11-cv-2727, 2014 WL 3512991, at *7 (N.D. Ill. July 14, 2014). She fails at both junctures. VCUSA's statements about the T8's electric range appearing in the challenged press releases and vehicle literature were based on NEDC testing performed by VCC when the T8 was first released in Europe. SOF ¶ 74. Other publications which referenced the estimated 17-mile figure were based on VCC's informal, preliminary testing based on EPA criteria, which VCC communicated to VCUSA months before the EPA finalized its testing figures in December 2015. *Id.*, ¶¶ 64, 68-69, 75. As VCUSA's corporate representatives explained, because the EPA test is typically not performed until there are vehicles already "on the ground" in the United States and shortly before they are made available for purchase, VCUSA provides information about the NEDC test to give interested individuals "an idea of what the car has the capacity of doing." *Id.*, ¶ 76. This is standard industry practice, done by other European manufacturers. *Id.*, ¶ 78. The purpose of including information in press releases, including before EPA testing is done, is to "give the best context" for the vehicles as possible "based on the best information" VCC and VCUSA have at the time. *Id.*, ¶ 77. Moreover, as established above, VCUSA never made any guarantees about the electric range performance Plaintiff would experience, or what the EPA would eventually certify as the electric range. It is likewise undisputed that the

- 35 -

Monroney stickers for the T8 vehicles included the EPA-certified figures, as required by federal law. *Id.,* ¶¶ 70-72. Plaintiff has adduced no evidence that VCUSA provided knowingly false information to her, or that it did so with the intent to deceive her, let alone sufficient evidence to support a verdict in her favor. *See Frerck*, 2014 WL 3512991, at *7-8 (plaintiff's failure to identify knowingly false statements justified entry of summary judgment).

Plaintiff also cannot establish reliance. Under Illinois law, it is not enough for Plaintiff to show that she relied on the truth of the challenged statements, her reliance must be *justified. Davis*, 396 F.3d at 882. As *Davis* instructs, "Illinois courts have long recognized that a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. When he is afforded the opportunity of knowing the truth…he cannot be heard to say he was deceived by the representations." *Id.* (quoting *Elipas Enters., Inc. v. Silverstein*, 243 Ill. App. 3d 230 (1993) (collecting cases)). VCUSA's *actual* representations—rather than the incomplete summaries Plaintiff received from her husband—revealed that the information provided was estimated, preliminary, based on NEDC figures, related to the international car range, and/or subject to country-to-country variance. *See* Section I.A.1, *supra*. Plaintiff's husband, the person who read the supposed misrepresentations, knew that the information he reviewed was preliminary and non-final, but never asked about the final numbers. SOF ¶¶ 142-148. Plaintiff has adduced no evidence

suggesting that in the eleven months between when she pre-ordered her T8 and when she picked it up at the dealership and completed her purchase, she lacked the opportunity to discover the final Monroney-sticker electric range figure before acquiring her T8.  She admits she just never bothered to do it.  *Id.,* ¶ 155.  Without evidence to show justifiable reliance, her common law fraud claim fails.

## III.   Plaintiff's Express Warranty Claim Similarly Lacks Factual Proof.

Plaintiff's inability to establish false representations by VCUSA, and her inability to prove damages, also doom her express warranty claim.  To seek damages for breach of an express warranty, Plaintiff bears the burden to show "by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the term of the warranty."  *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors America, Inc.*, 372 Ill. App. 3d 354, 360 (2007).  "To be actionable under the theory of express warranty the claim must be based on an affirmation of fact or promise…*which is false.*"  *MacNeil Auto Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 794 (N.D. Ill. 2010).  The warrantor is the master of the express warranty, and the language of the warranty controls and dictates the rights of the parties.  *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 838 (Ill. 1988).  As such, an express warranty "must be interpreted in a

manner that is consistent with the clear and express language contained therein." *Hasek v. DaimlerChrysler Corp.*, 745 N.E.2d 627, 636 (Ill. App. Ct. 2001).

As discussed above, none of the press releases or vehicle literature contained false statements about the T8's range capabilities. These materials either state that the facts and descriptions they contain pertained to Volvo's "international car range," explicitly reference the NEDC, and/or qualify that the numbers contained are preliminary or estimated. None of them promise that Plaintiff would achieve a particular pure electric range performance when driving her T8, nor do they represent what range the EPA would eventually certify as the final range. The most that VCUSA could be said to have warranted was simply that the T8 international model has an NEDC-certified electric driving range estimate of around 40km, or that preliminary estimates revealed it might receive a 17-mile EPA range. There is no evidence that was false, and certified, independent testing shows it is true. SOF ¶¶ 61-63; 163-168. Plaintiff's breach of warranty claim accordingly fails. *See Dzielak*, 2019 WL 6607220, at *14-15 (failure to show false statement precluded consumer fraud and express warranty claims). Likewise, her inability to prove damages or submit a reasonable basis for computing them precludes her claim. *Petty,* 343 Ill. App. 3d at 823; *Ace Hardware*, 2008 WL 4286975, at *18.

Plaintiff's warranty claim also fails on an additional ground—she did not comply with the warranty procedures in her manual, and failed to provide VCUSA with a

meaningful opportunity to cure.  Under Illinois law, would-be warranty plaintiffs are obligated to provide notice of an alleged breach within a reasonable time.  *Ibarrola*, 83 F. Supp. 3d at 760.  "The purpose of the notice requirement is to encourage parties to resolve the dispute short of litigation." *Id.*  Although the warranty instructions included in the T8's manual directed Plaintiff to contact Volvo's Customer Care Center by phone or email, neither Plaintiff nor her husband did so.  SOF ¶¶ 176-78.  They never made a warranty claim.  *Id.*, ¶ 178.  Moreover, Plaintiff failed to provide VCUSA with a reasonable opportunity to cure the issue when she declined VCUSA's unconditional offer of a full refund, an offer which far exceeded even her faulty damages calculation. *Id.*, ¶¶ 179-180.  Such actions are inconsistent with Section 2-607 of the Uniform Commercial Code and its purpose.

## IV.   Summary Judgment is Proper on Plaintiff's Duplicative Unjust Enrichment Claim.

Plaintiff's unjust enrichment claim is based on the same alleged course of conduct that forms the basis of her statutory and common law fraud claims, and fails for the same reasons.  Under Illinois law, an unjust enrichment claim "is not a separate cause of action that, standing alone, will justify an action for recovery." *Siegel*, 612 F.3d at 937.  As such, the fate of an unjust enrichment claims which rests "on the same improper conduct alleged in another claim" stands or falls with the related claims.  *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).  Because Plaintiff has not identified any false or misleading conduct, and has failed to carry her burden on

proximate cause and damages, her unjust enrichment claim fails, and summary judgment is proper.  *See Siegel*, 612 F.3d at 936-37 (affirming summary judgment of unjust enrichment claim based on same premise as failed ICFA claim); *Wiegel*, 946 F. Supp. 2d at 817 (same); *Ibarrola*, 83 F. Supp. 3d at 760-61 (same); *Kremers*, 712 F. Supp. 2d at 775 (same).

In addition, unjust enrichment is an equitable remedy that is available only when no adequate remedy at law exists.  *Wiegel*, 946 F. Supp. 2d at 809.  The full refund VCUSA made available constitutes an adequate legal remedy that precludes summary judgment.  *See Jasper v. Abbott Labs, Inc.*, 834 F. Supp. 2d 766, 774 (N.D. Ill. 2011) (offer to refund constitutes adequate remedy at law precluding claim for unjust enrichment).

## **CONCLUSION**

For all of the reasons set forth above, Defendant Volvo Car USA, LLC respectfully requests that this Court grant its Motion for Summary Judgment and enter an order awarding judgment in favor of Volvo Car USA, LLC dismissing Plaintiff's First Amended Complaint in its entirety, with prejudice, as well as awarding any such other and further relief as the Court deems just and proper.

Dated:  November 1, 2021                        Respectfully submitted,

VOLVO CAR USA, LLC

By:  */s/  Oliver Beiersdorf*
Oliver Beiersdorf (#051951997)
REED SMITH LLP

- 40 -

599 Lexington Avenue, 22nd Floor
New York, New York 10022
(212) 521-5400
obeirsdorf@reedsmith.com

     -and-

Robert A. Roth (IL #6200416)
Karlin E. Sangdahl (IL # 6313895)
REED SMITH LLP
10 S. Wacker Drive, Suite 4000
Chicago, Illinois  60606
(312) 207-1000
rroth@reedsmith.com
ksangdahl@reedsmith.com

*Attorneys for Defendant Volvo Car
USA, LLC*