# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KHADIJA LAURENS, | : | |
| Plaintiff, | : | **Civil Action No. 18-cv-8798 (JXN) (JRA)** |
| | : | |
| v. | : | |
| | : | **OPINION** |
| VOLVO CARS OF NORTH AMERICA LLC, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**NEALS**, District Judge:

    **THIS MATTER** comes before the Court upon the filing of three motions: 1) Plaintiff Khadija Lauren's ("Plaintiff") renewed motion to certify class [ECF No. 168]; 2) Defendant Volvo Car USA, LLC's ("VCUSA" or "Defendant") motion to strike the expert declaration of Charles Lawson [ECF No. 173]; and 3) Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 [ECF No. 191].[1] Plaintiff filed opposition to Defendant's summary judgment motion [ECF. No. 198], to which Defendant replied [ECF No. 200]. This Court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. § 1332(d)(2). Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1). After carefully considering the parties' written and oral arguments, for the reasons that follow, Defendant's motion for summary judgment [ECF No. 191] is **GRANTED**, and the renewed motion to certify class [ECF No. 168] and the motion to strike [ECF No. 173] are **DENIED as moot**.

---

[1] The unredacted version of Defendant's summary judgment motion papers are located on the docket at ECF No. 192.

## I.     FACTUAL BACKGROUND

Plaintiff initiated this lawsuit alleging that Defendant VCUSA promised her that her vehicle, a 2016 Volvo XC90 T8 ("T8"), is capable of driving 25 miles using only electric power when it is not.  In the Amended Complaint, Plaintiff alleges four claims for consumer fraud, common-law fraud, express warranty, and unjust enrichment based on the same underlying allegations.  Following the close of discovery, Defendant moved for summary judgment on all claims.  The facts relevant to this motion are discussed herein.

Volvo Car Corporation ("VCC")[2] is the Swedish manufacturer of Volvo vehicles. Defendant's Statement of Undisputed Facts ("DSOF") ¶ 1, ECF No. 192-3; Plaintiff's Responsive Statement of Undisputed Facts ("PRSOF") ¶ 1, ECF No. 198-1.[3]  VCUSA acts as VCC's sales and distribution arm in the United States.  Plaintiff's Statement of Undisputed Facts ("PSOF") ¶ 4, ECF No. 198; Defendant's Responsive Statement of Undisputed Facts ("DRSOF") ¶ 4, ECF No. 201.  VCUSA purchases Volvo vehicles from VCC and then sells those vehicles to authorized Volvo dealers in the United States.  *Id.*  Volvo dealers then sell the vehicles to the ultimate consumers.  *Id.*  While VCUSA cannot dictate the price at which a dealer ultimately sells a Volvo vehicle to a consumer, it does generate a Manufacturer's Suggested Retail Price ("MSRP") for its Volvo vehicles.  PSOF ¶ 5; DRSOF ¶ 5.   The MSRP is the "baseline" for the final sale price.  *Id.*

In October 2014, VCC revealed its all-new generation XC90 luxury sport utility vehicle. DSOF ¶ 1; PRSOF ¶ 1.  The XC90 was offered in two power drive versions, the 2016 XC90 T6 Inscription ("T6") and the Twin Engine T8.  *Id.* ¶ 2.  The T8 version was introduced as a first-of-its-kind seven-passenger plug in hybrid ("PHEV") version of the luxury XC90.  *Id.* ¶ 3.  The T8

---

[2] The Court notes that VCC is not a party in this litigation.
[3] For the sake of brevity, all citations to the parties' Rule 56.1 statements in this Opinion incorporate the evidentiary citations contained therein.

had two modes of electric driving capability as a result of its electric motor combined with the gasoline engine – hybrid mode, and pure electric mode.  *Id.* ¶ 10.  The T8's most basic model had a MSRP of $68,100.00.  PSOF ¶ 50; DRSOF ¶ 50.  The T6 had an MSRP of $55,400.00.  *Id.*  The T6 is the most similar, non-hybrid version of the T8.  *Id.*

**<u>October 2014 Press Release</u>**

Prior to and after its release in the US, a number of press releases pertaining to the 2016 XC90 were made available on the "Media/Press" portion of VCUSA's website.  DSOF ¶ 79; PRSOF ¶ 79.  On October 21, 2014, VCUSA issued a press release in advance of the European launch of the T8.  *Id.* ¶ 86.  The press release stated that "[n]ormal driving is conducted in the default hybrid mode.  But at the push of a button the driver can switch to quiet and emission-free city driving on pure electric power where the range will be around 40 kilometers."  *Id.*  The October 21, 2014 press release also disclosed that the statements in the release "relate to Volvo Car Group's international car range" and that "[v]ehicle specifications may vary from one country to another and may be altered without prior notification."  *Id.* ¶ 87.  The October 21, 2014 press release does not state what the EPA certified pure electric range of the T8 will be.  *Id.* ¶ 88.

**<u>December 2014 Press Release</u>**

On December 8, 2014, VCUSA issued a press release, which states that hybrid is the "default mode" for driving, and states that in pure electric mode, the T8 "has a range of more than 40km using just electricity."  DSOF ¶ 89; PRSOF ¶ 89.  The December 8, 2014 press release also states that the "data used in the press release is based on the NEDC certification cycle used in the EU. The figures are preliminary."  *Id.* ¶ 90.  It further states that "Descriptions and facts in this press material relate to Volvo Car Group's international car range. Described features might be optional.  *Id.*  Vehicle specifications may vary from one country to another and may be altered

without prior notification." *Id.* ¶ 91. The December 8, 2014 press release does not state what the EPA certified pure electric range of the T8 will be. *Id.* ¶ 92.[4]

### April 2015 Press Release

On April 16, 2015 VCUSA issued a press release, which states that the hybrid drive mode is the "default mode." DSOF ¶ 93; PRSOF ¶ 93. The April 16, 2015 press release states that "Preliminary testing based on EPA criteria produced an estimated range of 17 miles using just electricity . . . ." *Id.* ¶ 94. The April 16, 2015 press release does not state what the EPA certified pure electric range will be. *Id.* ¶ 95.[5]

Nearly two-weeks later, on April 30, 2015, VCUSA issued a press release, which states that the XC90 T8 "delivers 49 g/km CO2, combined 407 hp*, 640 Nm, just 2.1 l/100km and 43 km pure electric range." DSOF ¶ 96; PRSOF ¶ 96. Later, it states that the "XC90 T8 has a range of more than 40km using just electricity." *Id.* The April 30, 2015 press release also states that "All figures are based on the NEDC driving cycle for hybrids." *Id.* ¶ 97. It further states that "Descriptions and facts in this press material relate to Volvo Car Group's international car range. Described features might be optional. Vehicle specifications may vary from one country to another and may be altered without prior notification." *Id.* ¶ 98. The April 30, 2015 press release does not state what the EPA certified pure electric range of the T8 will be. *Id.* ¶ 99.[6]

### January 2016 Press Release

VCUSA issued a press release on January 21, 2016, after Plaintiff took delivery of her vehicle, that provides that the T8 "has a range of more than 40km using just electricity." DSOF ¶ 100; PRSOF ¶ 100. The January 21, 2016 press release states that "Descriptions and facts in this

---

[4] Plaintiff does not dispute the substance of the statement but contends that "[c]osumers generally do not know what the differences between NEDC and EPA testing[.]" PRSOF ¶ 92.
[5] *See* n.3.
[6] *See* n.3.

press material relate to Volvo Car Group's international car range. Described features might be optional. Vehicle specifications may vary from one country to another and may be altered without prior notification."  *Id.* ¶ 101.  The January 21, 2016 press release does not refer to the EPA certified pure electric range figure, and does not reference the EPA at all.  *Id.* ¶ 102.[7]

### Brochure for the XC90

The brochure for the 2016 XC90 vehicle states "Fully charged, the T8 Twin Engine provides 17 miles (estimated) of pure electric driving . . . . "  DSOF ¶ 103; PRSOF ¶ 103.   This brochure does not state what the EPA certified pure electric range of the T8 will be.  DSOF ¶ 104.[8]

### Third Party Media Publications

In addition to press releases, third party media publications also published information about the 2016 XC90 T8, including the T8's pure electric range.  DSOF ¶ 105; PRSOF ¶ 105.   A February 15, 2015 Green Car Reports article stated that "Volvo quotes a range of 40 km (25 miles), but that's on the European NEDC cycle.  We *estimate* that the comparable EPA number is likely to be between 18 and 21 miles."  DSOF ¶ 107; PRSOF ¶ 107 (emphasis added).

 Another Green Car Reports article, dated May 21, 2015, states: "The XC90 T8 has a 9.2-kilowatt-hour lithium-ion battery pack, which provides enough capacity for 25 miles of electric range, Volvo claims. (*The EPA rated range may be lower*.)"  *Id.* ¶ 108 (emphasis added).

An April 16, 2015 media review published on Edmunds.com states that the "Volvo plug-in hybrid has an *estimated* electric range of 17 miles.  *Id.* ¶ 110.  *The EPA has not released official fuel economy numbers* on the XC90 T8 Twin Engine."  *Id.* (emphasis added).

---

[7] *See* n.3.
[8] Plaintiff disputes this fact, contending that the brochure provides an electric range based on EPA criteria.  PRSOF ¶ 104.

An April 20, 2015 article published by Autoweek states that the XC90 T8's lithium battery "provides the juice for an electric-only range of 17 miles, *though that's not an official EPA estimate* – we'll have to wait a few more weeks for the numbers that'll go on the window sticker." *Id.* ¶ 111 (emphasis added).

The Inside EV article referenced in Paragraph 28 of the Amended Complaint states that the T8's battery is "large enough to offer up to 40 km (25 miles) in the pure electric mode under NEDC conditions (expect less in the real world)." *Id.* ¶ 112.

### Plaintiff's T8 Purchase and Knowledge and Understanding of Driving Range Publications

Plaintiff pre-ordered her 2016 XC90 T8 in early 2015, almost one year before it became available for purchase in the United States.  DSOF ¶ 125; PRSOF ¶ 125.  Plaintiff completed her purchase and took delivery of her T8 vehicle on January 9, 2016.  *Id.* ¶ 126.  Plaintiff did not personally read a single press release, brochure, or article discussing the T8's pure electric range before purchasing her T8.  *Id.* ¶ 128.  Plaintiff did not view any of the representations cited in her complaint before purchasing her T8.  *Id.* ¶ 129.  Nor did Plaintiff do any independent research herself before purchasing her T8.  *Id.* ¶ 130.  Instead, Plaintiff testified that she relied on a "summary of the representations" that her husband relayed to her.  DSOF ¶ 131.[9]

Prior to Plaintiff's purchase of her T8, Plaintiff's husband viewed publications that noted that the information contained therein was related to Volvo Car Group's international car range, that the specifications contained therein may vary from country to country, and that the data contained in certain press releases he viewed was based on the NEDC cycle.  DSOF ¶¶ 132, 134,

---

[9] Plaintiff disputes this fact, contending that "the quoted portion of this paragraph is not actually Laurens's testimony. They are words that VCUSA's counsel used."  PRSOF ¶ 125.  During Plaintiff's deposition, counsel asked Plaintiff the following question: "So what you relied on when deciding to purchase your car is [your husband's] summary of the representations that he read when doing his review of the product literature?"  *See* Exhibit 19, at 27:5-9, ECF No. 191-24.  In response to counsel's question, Plaintiff answered: "Yes."  *Id.*

136; PRSOF ¶¶ 132, 134, 136.  Prior to Plaintiff's purchase of her T8, Plaintiff's husband viewed

a press release that stated that "preliminary testing based on EPA criteria produced an estimated

range of 17 miles using just electricity . . .."   DSOF ¶ 140; PRSOF ¶ 140.

Plaintiff's husband did not tell her that the data contained in certain press releases he

viewed was based on the NEDC cycle.  *Id.* ¶ 137.  Plaintiff's husband also did not tell Plaintiff

before she purchased her T8 that any of the publications he viewed contained preliminary figures

or stated that the EPA range was still forthcoming.  *Id.* ¶ 144.  Although the press releases often

provided the T8 range in terms of kilometers, Plaintiff stated that her husband only communicated

that the range would be 25 miles, and could not remember any mention of kilometers.  *Id.* ¶ 145.

Plaintiff's husband did not ask, at any point before Plaintiff finalized her T8 purchase, to see a

finalized electric mileage range.  *Id.* ¶ 147.  Plaintiff's husband never spoke with anyone at Volvo

about the T8's pure electric mileage.  *Id.* ¶ 148.  Plaintiff's husband was aware that variables like

temperature, speed, and road type impact electric mileage.  *Id.* ¶ 149.  Plaintiff could not recall

whether her husband ever mentioned to her that driving conditions and how a vehicle is driven can

affect the electric range on the T8.  *Id.* ¶ 152.

## II.   LEGAL STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine

issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

Federal Rule of Civil Procedure 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson,*

*Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996).  A factual dispute is genuine only

if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving

party," and it is material only if it has the ability to "affect the outcome of the suit under governing

law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  *Anderson*, 477 U.S. at 248.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 322.  If the movant satisfies its initial burden, the nonmoving party cannot rest upon mere allegations in the pleadings to withstand summary judgment; rather, the nonmoving party "must counter with specific facts which demonstrate that there exists a genuine issue for trial."  *Orson*, 79 F.3d at 1366.  Specifically, the nonmoving party "must make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial."  *Huang v. BP Amoco Corp*, 271 F.3d 560, 564 (3d Cir. 2001); *see Orsatti v. New Jersey State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case.").  Thus, "a mere 'scintilla of evidence' in the nonmovant's favor" is insufficient to create a genuine issue of fact."  *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016) (citation omitted); *see Lackey v. Heart of Lancaster Reg'l Med. Ctr.*, 704 F. App'x 41, 45 (3d Cir. 2017) ("There is a genuine dispute of material fact if the evidence is sufficient for a reasonable factfinder to return a verdict for the nonmoving party.").  Ultimately, it is not the Court's role to make findings of fact, but to analyze the facts presented and determine if a

reasonable jury could return a verdict for the nonmoving party.  *See Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000).

**III.   DISCUSSION**

**A.   <u>Illinois Consumer Fraud Act</u>**

A successful ICFA claim requires a plaintiff to prove "(1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception."  *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (citation omitted).[10]  For purposes of this decision, the Court will only focus on the first and fifth elements.

***i.   False or Deceptive Statements about the T8's Pure Electric Range***

Courts apply a "reasonable consumer" standard in evaluating the likelihood of deception under the ICFA.  *Alleman v. Collection Prof'ls, Inc.*, Case No. 1:17-cv-9294, 2019 WL 5576872, at *6 (N.D. Ill. Oct. 29, 2019).  And critically, "when determining whether a statement is deceptive or misleading . . . a court considers the statement in context, viewing the product as a whole" and evaluating all the information available to the consumer.  *Deckers Outdoor Corp. v. Australian Leather Pty. Ltd.*, 340 F. Supp. 3d 706, 719 (N.D. Ill. 2018); *Bober v. Glaxo Wellcome Plc*, 246 F.3d 934, 938-39 (7th Cir. 2001); *Davis*, 396 F.3d at 884.  Courts applying Illinois law have repeatedly awarded summary judgment—or dismissed claims at the pleading stage—when the challenged statements and representations could not be false or misleading under this carefully crafted standard.  *See*, *e.g., Bober*, 246 F.3d at 938-940; *Davis*, 396 F.3d at 884; *Killeen v. McDonald's Corp.*, 317 F. Supp. 3d 1012, 1013-14 (N.D. Ill. 2018); *Ibarrola v. Kind, LLC*, 83 F.

---

[10] The parties do not dispute that Illinois law applies.

Supp. 3d 751, 756-59 (N.D. Ill. 2015); *Wiegel v. Stork Craft Mfg., Inc.*, 946 F. Supp. 2d 804, 810-17 (N.D. Ill. 2013); *Trujillo v. Apple Comput., Inc.*, 581 F. Supp. 2d 935, 938-39 (N.D. Ill. 2008); *Deckers Outdoor Corp.*, 340 F. Supp. 3d at 719.

The crux of Plaintiff's ICFA claim is her contention that VCUSA misrepresented the distance her T8 would be able to travel when operating solely on electric power. In her Amended Complaint, Plaintiff alleges that VCUSA misrepresented that her T8 would achieve a range of 25 miles using solely electric power from the T8's battery, while knowing that the "real" range was less. *See* Am. Compl. ¶ 55, ECF No. 22. In support of her claim, Plaintiff identifies several statements which she alleges contain misrepresentations about the T8's pure electric range. *See id.* ¶¶ 15-20, 25-29, ECF No. 22. Plaintiff claims that she relied on these misrepresentations, which provide the basis for her ICFA claim. *Id.* ¶ 56. The Court will address each alleged misrepresentation in turn.

First, Plaintiff alleges that on "October 21, 2014, VCUSA issued a press statement in the United States directed to United States consumers about the "all-new Volvo XC90." Am. Compl. ¶ 15. In that press release, VCUSA stated that the range for driving on pure electric power "will be *around* 40 kilometers." *Id.* (emphasis added). Plaintiff claims that 40 kilometers translates to a range of 24.85 miles. *Id.* This press release, which is attached at Exhibit 1 to Plaintiff's Amended Complaint and cited in Defendant's statement of undisputed facts, also provides that the statements "relate to Volvo Car Group's *international* car range" and that "[v]ehicle specifications *may vary from one country to another* and may be altered without prior notification." DSOF ¶ 87 (emphasis added).

As to the second misrepresentation, Plaintiff alleges that "[o]n December 8, 2014, VCUSA issued a press release in the United States directed to United States consumers stating that '[t]he

10

XC90 T8 has a range of more than 40km using just electricity, which covers the total distance most people drive in one day.'" Am. Compl. ¶ 16.  This press release, which is attached at Exhibit 2 to Plaintiff's Amended Complaint and cited in Defendant's statement of undisputed facts, also provides that the "data used in the press release is ***based on the NEDC certification cycle used in the EU. The figures are preliminary***."  DSOF ¶ 90 (emphasis added).

Plaintiff further alleges that on April 16, 2015, VCUSA issued another press release in the United States directed to United States consumers about the T8.  Am. Compl. ¶ 17.  Plaintiff claims that VCUSA stated "[p]reliminary testing based on EPA criteria produced an ***estimated*** range of 17 miles using just electricity, which represents a high percentage of drivers' typical daily usage." *Id.* (emphasis added).  This press release, which is attached at Exhibit 3 to Plaintiff's Amended Complaint and cited in Defendant's statement of undisputed facts, emphasizes that the testing was preliminary and that the range of miles using just electricity was estimated.  *See* DSOF ¶ 90.

As to the fourth misrepresentation, Plaintiff alleges that VCUSA produced a marketing brochure directed to United States consumers that stated: "Fully charged, the T8 Twin Engine provides 17 miles (***estimated***) of pure electric driving – sufficient to cover ***most*** commutes and everyday scenarios." Am. Compl. ¶ 18 (emphasis added).  This press release, which is attached at Exhibit 4 to Plaintiff's Amended Complaint and cited in Defendant's statement of undisputed facts, provides an estimated range the T8 would travel for most commutes.

Next, Plaintiff alleges that on April 30, 2015, VCUSA went back to its original claims concerning the T8's electric range from its April 16 press release and surpassed them, stating that the T8 delivers "43km pure electric range."  Am. Compl. ¶ 19.  According to Plaintiff, "[a] range of 43km translates to a range of 26.72 miles." *Id.*   This press release, which is attached at Exhibit 5 to Plaintiff's Amended Complaint and cited in Defendant's statement of undisputed facts, also

11

notes that "[a]ll figures are based on the ***NEDC driving cycle for hybrids***." DSOF ¶¶ 96-97 (emphasis added).   It further notes that the press release pertains to Volvo Car Group's international car range and that specifications can vary from country to country.  *Id*. ¶ 98.

Finally, on January 21, 2016, which is almost two weeks after Plaintiff received her T8, Plaintiff alleges that VCUSA issued a press release in the United States directed to United States consumers stating that "[t]he XC90 T8 has a range of more than 40 km using just electricity, which covers the total distance many people drive in one day."  Am. Compl. ¶ 20.  This press release, which is attached at Exhibit 5 to Plaintiff's Amended Complaint, also provides that "[d]escriptions and facts in this press material relate to Volvo's Car Group's international car range . . . Vehicle specifications may vary from one country to another and may be altered without prior notification. ECF No. 22-6 at 3.

In addition to the press releases, Plaintiff produced the following third-party internet publications that contained information about the T8 and its pure electric performance:

- A February 15, 2015 Green Car Reports article stated that "Volvo quotes a range of 40 km (25 miles), but that's on the European NEDC cycle. We estimate that the comparable EPA number is likely to be between 18 and 21 miles."  DSOF ¶ 107; PRSOF ¶ 107.

- On May 21, 2015, the same outlet published another article stating that "The XC90 T8 has a 9.2-kilowatt-hour lithium-ion battery pack, which provides enough capacity for 25 miles of electric range, Volvo claims. (The EPA rated range may be lower.)"  *Id.* ¶ 108.

- The Car Magazine UK article cited in Paragraph 27 of the FAC references the "European test" when discussing the T8's pure electric range.  *Id.* ¶ 109.

- An April 16, 2015 review published on Edmunds.com stated that the "***Volvo plugin hybrid has an estimated electric range of 17 miles. The EPA has not released official fuel economy numbers on the XC90 T8 Twin Engine.***"  *Id.* ¶ 110 (emphasis added).

- The Inside EV article referenced in paragraph 28 of the Amended Complaint says that the T8's battery is "large enough to offer up to 40km (25 miles) in the pure electric mode under NEDC conditions (expect less in the real world)."  *Id.* ¶ 112.

- An Autoweek review published on April 20, 2015, likewise, stated that the T8's lithium battery "provides the juice for an electric-only range of 17 miles, though that's not an official EPA estimate – we'll have to wait a few more weeks for the numbers that'll go on the window sticker."  *Id.* ¶ 111.

*See* DSOF ¶¶ 107-12 (citations to the exhibits cited therein); PRSOF ¶¶ 107-12.

When determining whether a statement is deceptive or misleading, a court considers the statement in context, viewing the product as a whole and evaluating all the information available to the consumer.  *See Deckers Outdoor Corp.*, 340 F. Supp. 3d at 719 (citing *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 250–51 (3d Cir. 2011)).  In *Deckers*, Australian Leather alleged that Deckers falsely represents that its boots are made in Australia in violation the Illinois Consumer Fraud Act, among other violations.  *Id.*  Australian Leather argued that it is deceptive to use the slogan "UGG Australia" when the boots are not manufactured in Australia.  *Id.*  Although the boots were labeled "UGG Australia," the court noted that Deckers accurately labeled the inside of each pair of boots with the country of manufacture.  *Id.*  Finding that no reasonable juror could conclude that Deckers deceptively marketed its boots as being made in Australia, the court explained that "every pair of boots with that label also contains a more specific country of origin label" and "the UGG Australia label does not state that the boots were made in Australia."  *Id.*  In

rendering its decision, the court considered the statements in context, viewing the product as a whole. *Id.*

When reviewing all the statements in the press releases, third party publications, and vehicle literature discussed above as a whole, the court cannot conclude that Defendant acted deceptively.  Although the representations in the materials that Plaintiff relied on includes a range that the T8 is projected to travel using solely electric power, the materials also include clear statements that the range information provided is "estimated," "preliminary based on EPA criteria," based on the NEDC cycle, and that "vehicle specifications may vary from one country to another."  In fact, Plaintiff does not dispute that the information contained in many of the press releases that her husband saw contained test results in kilometers, the common European unit of measurement.  PRSOF ¶ 145, DSOF ¶ 145.  Nor does Plaintiff dispute that her husband read press releases that explicitly stated that the 40-kilometer range was based on testing performed under the NEDC test criteria mandated in Europe, where the T8 was manufactured and first offered for sale.  *Id.* ¶¶ 64, 136-37.  There is no evidence in the record that any of the materials guarantee or make a promise about what range Plaintiff, or any driver, would achieve when driving their T8.  Reading the representations that were available to Plaintiff prior to purchasing the T8, in their full context as directed by the *Deckers* court, no reasonable consumer could have thought that the T8 was guaranteed to travel, in all circumstances, 25 miles, or even 17 miles, on a single charge using solely electric power.

Nevertheless, Plaintiff maintains that the T8 is not capable of achieving the advertised pure electric range and that a reasonable consumer could believe that VCUSA's representations were the official EPA certified range.  Despite the lack of guarantee or promises in the representations in the press releases, third party publications, or vehicle literature, the materials do represent that

the T8 has an *estimated* electric range of 17 to 25 miles.  Defendant submitted evidence that Plaintiff's T8 traveled in a range of 18-20 miles in pure electric mode when the vehicle was preconditioned, and safety and power features were used.  *See* Ex. 21, ECF No. 192-12; *see also* Ex. 22, Walter Dep., at 27:21-28:19, ECF No. 192-13.  After Plaintiff's husband complained to his local dealer that he was unable to obtain the range that he expected, Paul Walter tested Plaintiff's T8 by driving it in pure electric mode under a variety of conditions.  DSOMF ¶¶ 162-63.  Based on the results of the tests, Mr. Walter concluded that "[g]iven the expected % of battery power loss for the ambient temperatures while testing, the vehicle performed within Volvo's stated range of 17-25 miles."  *See* Ex. 21, ECF No. 192-12.  In response to this evidence, Plaintiff contends that David Sacco, a representative of the dealership from which Plaintiff purchased her T8, found Mr. Walter's results "to be the result of, in essence, cooking the books, as well as inconsistent with VCUSA's advertisements."  ECF No. 198 at 22.  Despite Mr. Sacco's claim, Plaintiff has not submitted sufficient evidence to rebut Mr. Walter's report.

Having reviewed the representations in the press releases, third party publications, and vehicle literature, which Plaintiff relied on before purchasing the T8, the Court concludes that the representations did not guarantee or promise that the T8 would travel, in all circumstances, 25 miles on a single charge.  Thus, the Court finds that no reasonable juror could conclude that Defendant deceptively represented that the T8 would achieve a certain range of miles using solely electric power.

### ii.    *Damages*

Notwithstanding the above, Plaintiff has not submitted sufficient evidence regarding damages to survive summary judgment.  As Defendant correctly notes, damages are an essential element of every claim Plaintiff brings in this case, including her cause of action under the ICFA.

ECF No. 192-1 at 27.  "As courts have held in a variety of contexts, a nonmovant's failure to produce sufficient evidence of the damages element of its claim calls for the entry of summary judgment." *Dunkin' Donuts Inc. v. N.A.S.T., Inc.*, 428 F. Supp. 2d 761, 767 (N.D. Ill. 2005). Although damages need not be proven "to an absolute certainty," the plaintiff "must present enough evidence to create a genuine issue of fact pertaining to damages," including "a basis for computing damages with a fair degree of probability." *Petty v. Chrysler Corp.*, 343 Ill. App. 3d 815, 823 (2003); *Ace Hardware Corp. v. Marn, Inc.*, No. 06-cv-5335, 2008 WL 4286975, at *18 (N.D. Ill. Sept. 16, 2008).  As the Seventh Circuit has observed, "[a]ssessing damages is often and permissibly speculative, but only within limits." *Ace Hardware*, 2008 WL 4286975, at *18 (quoting *Haslund v. Simon Prop. Group, Inc.*, 378 F.3d 653, 658 (7th Cir. 2004)).  "[M]ere speculation, hypothesis, conjecture, or whim" will not suffice.  *Petty*, 343 Ill. App. 3d at 823 (quotation omitted).

Here, in calculating her damages, Plaintiff contends that she did not receive the benefit of her bargain because VCUSA did not live up to its represented electric range.  ECF No. 198 at 45. More specifically, Plaintiff contends that "she paid for a T8 with an MSRP that factored in a 25-mile electric charge, but only received, at best, 13 miles per the EPA."  *Id.*  Plaintiff notes that the T6's MSRP is $55,400.00 and the T8's MSRP is $68,100.00.  Plaintiff further notes that "the electric driving capability at a rate of 25 miles per electric charge is worth $12,700.00."  *Id.*  Based on this, Plaintiff contends that her damages are "calculated by multiplying the 12/25 fraction (the amount of the advertised electric range that she did not receive (25 minus 13) over the actual electric range factored into the MSRP) by $12,700.00. That equals $6,096.00."  *Id.*

In response, Defendant contends that Plaintiff's "entire damages case hinges on her demonstrably false premise that the only difference between her T8 hybrid and the T6 model of

the XC90 vehicle is the T8's pure electric driving capability."  ECF No. 200 at 18.  Defendant

further contends that Plaintiff's T8 conformed with each range representation from VCUSA.  *Id.*

at 20.  Defendant argues that Plaintiff has adduced no evidence as to how the MSRP of the T8 was

originally set, and what value, if any, VCUSA, placed on EPA ratings in pure electric mode.

Finally, Defendant argues that Plaintiff cannot dispute that the T8's MSRP was advertised long

before final EPA ratings were released, so it is difficult to see how the MSRP could have anything

to do with EPA results."  *Id.*  The Court agrees.

　　　As an initial matter, Defendant has submitted sufficient evidence to support its contention

that Plaintiff's T8 conformed with each range representation from VCUSA.  *See* Waler Dep., at

27:21-28:19, ECF No. 192-13 (finding that Plaintiff's T8 traveled in a range of 18-20 miles in pure

electric range when the vehicle was preconditioned, and safety and power features were used.);

*see also* Ex. 21, ECF No. 192-12 (Mr. Walter concluded that "[g]iven the expected % of battery

power loss for the ambient temperatures while testing, the vehicle performed within Volvo's stated

range of 17-25 miles.").

　　　Though Plaintiff contends that the only difference between her T8 and the T6 is the T8's

pure electric driving capability, Plaintiff concedes through her responses to Defendant's statement

of facts that the T6 and T8 have several differences.  For example, Plaintiff does not dispute the

following facts:

- The T6 had a power output of 316 horsepower.  DSOF ¶ 21; PRSOF ¶ 21.
- The T8 had a power output of 400 horsepower.  PRSOF ¶ 22.
- The T6 does not have an MPGe rating.  DSOF ¶ 26; PRSOF ¶ 26.
- The T8 has hybrid electric driving capability at the range of 53 MPGe.  *Id.* ¶ 191.
- The T6's acceleration from 0-60 m.p.h. is 6.1 seconds.  *Id.* ¶ 28.
- The T8's acceleration from 0-60 m.p.h. is 5.3 seconds.  *Id.* ¶ 27.
- The T8s were equipped with a unique, handmade Orrefors crystal gear shift knob not available on the T6.  *Id.* ¶ 33.
- Plaintiff has not claimed that her T8 does not achieve any of the following benefits provided by the electric motor in her vehicle:

- o   hybrid electric driving capability at the range of 53 MPGe;
- o   power output of 400 horsepower;
- o   a 472 torque rating;
- o   acceleration from 0-60 m.p.h. in 5.3 seconds.  *Id.* ¶ 191.

Based on the undisputed evidence, the T6 and T8 have several differences, which are not accounted for in Plaintiff's damages calculations.  Her failure to account for these differences is fatal to her damage claim.

Moreover, Plaintiff's assumption that the T8's MSRP was based on a 25-mile EPA pure electric rating is also fatal to her damage claim.  To date, Plaintiff has adduced no evidence as to how the MSRP of the T8 was set, including how (and whether) the T8's actual electric mileage capability factored into the MSRP.  Plaintiff has likewise identified no evidence that the EPA certified range in pure electric mode had any impact on the T8's MSRP.  At this stage of the litigation, to survive Defendant's summary judgment motion, Plaintiff must present some evidence on which the jury could reasonably find in her favor.  *See Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010).  Plaintiff has not.  Accordingly, summary judgment is granted in favor of Defendant on this claim.

### B.  Common law Fraud

Plaintiff's common law fraud claim, which is based on the same underlying facts as Plaintiff's ICFA claim, fails for the same reasons her ICFA claim failed.  *See* Am. Compl. ¶ 60 ("Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 52 above as if fully set forth herein.").  To succeed in advancing a common law fraud claim, a plaintiff must establish (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act: (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.  *Davis*, 396 F.3d at 881-82.  As set forth above, Plaintiff has not

presented evidence of a deceptive act or false statement of material fact and has not satisfied her burden to establish damages. These failings are equally fatal to her fraud claim. *Id.* at 881-84 (affirming summary judgment on ICFA and fraud claims). Accordingly, summary judgment is granted in favor of Defendant on this claim.

### C.  <u>Unjust Enrichment</u>

Plaintiff's unjust enrichment claim is based on the same alleged course of conduct that forms the basis of her ICFA and common law fraud claims and, accordingly, fails for the same reasons. *See* Am. Compl. ¶ 75 ("Plaintiffs re-allege and incorporate by reference the allegations contained in paragraphs 1 through 52 above as if fully set forth herein."). Under Illinois law, an unjust enrichment claim "is not a separate cause of action that, standing alone, will justify an action for recovery." *Siegel*, 612 F.3d at 937. As such, the fate of an unjust enrichment claims which rests "on the same improper conduct alleged in another claim" stands or falls with the related claims. *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because Plaintiff has not identified any false, misleading or deceptive conduct, and has failed to carry her burden on damages, her unjust enrichment claim fails, and summary judgment is proper. *See Siegel*, 612 F.3d at 936-37 (affirming summary judgment of unjust enrichment claim based on same premise as failed ICFA claim); *Wiegel*, 946 F. Supp. 2d at 817 (same); *Ibarrola*, 83 F. Supp. 3d at 760-61 (same); *Kremers*, 712 F. Supp. 2d at 775 (same). Accordingly, summary judgment is granted in favor of Defendant on this claim.

### D.  <u>Breach of Express Warranty</u>

Plaintiff's breach of express warranty claim is based on the same alleged course of conduct that forms the basis of her ICFA and common law fraud claims and fails for the same reasons. *See* Am. Compl. ¶ 68 ("Plaintiffs re-allege and incorporate by reference the allegations contained

in paragraphs 1 through 52 above as if fully set forth herein.").  To seek damages for breach of an express warranty, Plaintiff bears the burden to show "by a preponderance of the evidence the terms of the warranty, the failure of some warranted part, a demand upon the defendant to perform under the terms of the warranty, a failure of the defendant to do so, a compliance with the terms of the warranty by the plaintiff, and damages measured by the term of the warranty." *Oggi Trattoria & Caffe, Ltd. v. Isuzu Motors America, Inc.*, 372 Ill. App. 3d 354, 360 (2007).  "To be actionable under the theory of express warranty the claim must be based on an affirmation of fact or promise…which is false." *MacNeil Auto Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 794 (N.D. Ill. 2010).  The warrantor is the master of the express warranty, and the language of the warranty controls and dictates the rights of the parties. *Collins Co. v. Carboline Co.*, 532 N.E.2d 834, 838 (Ill. 1988).  As such, an express warranty "must be interpreted in a manner that is consistent with the clear and express language contained therein." *Hasek v. Daimler Chrysler Corp.*, 745 N.E.2d 627, 636 (Ill. App. Ct. 2001).

Plaintiff's breach of express warranty claim is based on the premise that Defendant falsely represented that the T8 would achieve a range of 25 miles solely on electric power.  *See* Am. Compl. ¶ 69.  Because the Court finds that Defendant did not deceptively represent that the T8 would achieve a certain range of miles using solely electric power and further finds that Defendant submitted sufficient evidence that Plaintiff's T8 conformed with each range representation from VCUSA, Plaintiff's breach of express warranty claim fails.  Accordingly, summary judgment is granted in favor of Defendant on this claim.

### IV.     CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment [ECF No. 191] is

**GRANTED**, and the renewed motion to certify class [ECF No. 168] and the motion to strike [ECF

No. 173] are **DENIED as moot**.


                                                    s/ Julien Xavier Neals
DATED: February 6, 2023                      **JULIEN XAVIER NEALS**
                                             United States District Judge

21